## HENRY A. WARD, Respondent, v. CONCORDIA FIRE INSURANCE COMPANY, Appellant.*

Kansas City Court of Appeals.    May 26, 1924.

1. **INSURANCE: Insurable Interest: Insured Held to Have an Equitable Interest in Property Which was a Sufficient Insurable Interest Therein.** Where plaintiff without notice of defect in insanity proceedings purchased land which had been sold by guardian of insane person in good faith, and by reason of said defect in said insanity proceedings did not obtain title, but had a lien for purchase money, interest, etc., *held* under evidence to have insurable interest in property.

2. ———: **Under Statute Insurer Not Permitted to Question Value of Property Insured.** Under section 6229, Revised Statutes 1919, an insurance company is not permitted to question the value of the property insured.

3. ———: **Question of the Discharge of Insured's Lien upon Property Held a Matter of Defense.** In an action upon a fire policy the question of the discharge of insured's lien upon property *held* a matter of defense.

4. ———: **Judgment: Insurer Held Bound by Judgment Between Insured and Another Determining His Interest in Land.** Insurer, although not a party to a suit, was bound by judgment in favor of insured which declared and determined his interest in land.

5. **SUBROGATION: Right Does Not Exist Until the Whole Debt Involved Has Been Paid.** The right of subrogation does not exist until the whole debt involved has been paid.

---

*Headnotes 1. Fire Insurance, 26 C. J., Section 14; 2. Fire Insurance, 26 C. J., Section 453; 3. Fire Insurance, 26 C. J., Section 722; 4. Judgments, 34 C. J., Section 1483; 5. Subrogation, 37 Cyc., p. 379.

Appeal from the Circuit Court of Livingston County.—
*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*A. G. Knight* for respondent.

*Bruce Barnett* for appellant.

ARNOLD, J.—This is an action upon a fire insurance policy whereby defendant by its policy issued November 15, 1917, agreed to indemnify plaintiff against loss by fire, as follows: Upon a certain dwelling house in the city of Trenton, Grundy County, Missouri, and known as Block One (1) Nathan Franklin's first addition to the city of Trenton, $2500; on a certain woodhouse standing upon the same lot, $500, and on certain household goods contained in said dwelling, $200.

Said dwelling and woodhouse, with the furnishings of said dwelling, were almost, if not totally destroyed by fire on August 6, 1918. Proof of loss was furnished and defendant denied liability upon the dwelling and woodhouse but acknowledged liability upon the household goods and this item was adjusted and paid. Upon defendant's refusal to pay the loss claimed upon the other two items, plaintiff instituted action in the circuit court of Grundy county on July 22, 1919. The cause was tried to a jury and resulted in a verdict and judgment for plaintiff. An appeal to this court resulted in a reversal of the judgment and the remanding of the case for a new trial, upon the ground that plaintiff had failed to show the extent of his equitable interest in the property. [Ward v. Insurance Co., 211 Mo. App. 554, 244 S. W. 959.]

The original controversy as to the insurance on the buildings arose chiefly over the question of plaintiff's ownership in and title to the property. As to that phase of the case the facts are that the lot on which the buildings were located was owned in the year 1895 and stood in the name of Nathaniel Shanklin who, in that year, became insane and was confined in a sanitarium. While he was so confined the probate court, upon inquiry, rendered a judgment finding him insane and appointed a guardian for him. Under proceedings thereafter in-

stituted by the guardian to sell real estate for the payment of debts, the lot was sold on May 3, 1900, to one Berry who sold it December 26, 1904, to plaintiff herein for $2600. Plaintiff went into possession thereof and occupied the house as a dwelling until it was burned, as stated.

In 1910 Shanklin recovered his sanity and thereafter instituted several suits to set aside the various deeds made by the guardian on the ground that as Shanklin was never notified of the proceeding to adjudge him insane, the judgment and the deeds made by the guardian were void. Among the suits so instituted by Shanklin was the one against plaintiff herein to recover the particular lot involved in this controversy. Another was Shanklin v. Boyce, to recover property not involved herein. These suits were pending in the circuit court at the time the policy sued on herein was issued. The Boyce case was appealed to the Supreme Court and the case against plaintiff was continued pending a decision in the Boyce case. A decision in that case was handed down June 4, 1918 (Shanklin v. Boyce, 204 S. W. 187), and thereafter on August 6, 1918, as above stated, the building and property covered by the policy herein were burned. The suit on the policy was instituted July 22, 1919, and at the trial on November 14, 1919, a verdict and judgment were for plaintiff in the sum of $2500, loss on the house, together with $150 interest thereon; $200 on the woodhouse with $12 interest thereon; and an attorney's fee of $250, aggregating $3112. From that judgment defendant appealed to this court with the result above indicated. In the meantime, the case of Shanklin v. Ward, was heard in the circuit court and appealed by Shanklin to the Supreme Court where it was decided in favor of Shanklin, as in the Boyce case. [Shanklin v. Ward, 291 Mo. 1, 204 S. W. 187.]

The pleadings show that the policy sued on contained the usual provision that if the interest of the assured be or become "other than the entire, unconditional and sole ownership of the property," or, "if the buildings in-

sured be on ground not owned by the assured in fee simple,'' the policy should be void, "unless otherwise provided for by agreement endorsed thereon,'' and that no agent of the company had authority to waive these conditions. These provisions were pleaded in the answer, and after setting up the facts showing that the guardian's deed, through which plaintiff claimed title, was void, alleged that plaintiff was not the owner in fee of the property and the policy, therefore, was void for that reason.

The reply set up the insanity of Shanklin, appointment of a guardian, the indebtedness of Shanklin, the order of sale to pay debts, the purchase by Berry at such sale, the guardian's deed to him, and the conveyance by Berry to plaintiff for a consideration of $2600, which plaintiff, in good faith and without notice of any defect in said proceedings, paid to Berry; that 'the money (amount not stated), so paid by Berry to said guardian, was used by him for Shanklin's benefit and the payment of his debts; that the purchase price of $2600 was paid by plaintiff in good faith, and in the belief that he was thereby getting a fee-simple title to the lot; that in good faith and relying upon his apparent fee-simple title to the land, plaintiff expended large sums of money, time and labor in making permanent improvements of value on said property amounting, approximately, to $11,000. That plaintiff's grantor, Berry, expended $500 in permanent improvements on the property; that plaintiff and his grantor since 1900 had paid the sum of $500 in taxes thereon, and that plaintiff in good faith believing that he had received from Berry a good title in fee simple, went into and continued in possession of said property up to the time he took out the policy in question and thereafter up to and including the date of the fire.

The reply further pleaded waiver in that the agent of defendant at Trenton who issued and countersigned the policy and collected the premiums had full knowledge of all the facts relative to the imperfection in plaintiff's

title, and of all the facts pleaded by defendant to show want of title in plaintiff.

In our former opinion all points raised by the pleadings at issue in the former appeal were decided against defendant's contention, save and except the question as to whether plaintiff had an insurable interest in the property, and the incidental question of statutory penalty for vexatious delay. The opinion said (211 Mo. App. p. 561):

"It is no doubt true that an equitable interest is sufficient to support an insurable interest. [1 Cooley's Brief on Ins., 150; Hubbard v. North British, etc., Ins. Co., 57 Mo. App. 1.] And, generally speaking, anyone who will suffer a present and not a mere expectant or prospective loss from the destruction of property has an insurable interest. [Home Ins. Co. v. Mendenhall, 164 Ill. 458.] But, in the case at bar, plaintiff by his mere purchase and occupation of the property obtained no equitable rights therein. He bought from one who purchased from a *pseudo* guardian who had no right to sell, and who did not thereby bind the owner. In other words, plaintiff obtained no equitable rights whatever in the property except such as are shown to be based upon a benefit which can be traced back to the owner Shanklin. If the money paid for the property at the so-called guardian's sale, or any part thereof, went to the owner or was used for his benefit, and if the plaintiff after his purchase made permanent improvements on said property which would enhance the value of the property in the true owner's hands, then to that extent plaintiff had an equitable interest in or lien upon the property. [Shanklin v. Ward, 236 S. W. 69.] And such interest is an insurable interest, at least to the extent of the amount of money that went to the benefit of the true owner and the value of the permanent improvements that were covered by the insurance. [1 Cooley's Briefs on Ins. 156; Insurance Co. v. Stinson, 103 U. S. 25.]''

Prior to a retrial of the case a change of venue was taken to Livingston County, where the cause was tried to the court without the aid of a jury. The finding and judgment of the court were for plaintiff in the sum of $3442.50. A motion for new trial being unsuccessful, defendant appeals.

Before the cause was heard in the circuit court of Livingston County, on May 10, 1923, defendant, by permission of the court, filed an amended answer which is, first, a general denial, and as further answer, denies ownership in plaintiff of the property, and sets up the proceedings whereby Shanklin was declared insane, his restoration to sanity and the return to him of his rights in the property in question; avers that at the time of the fire there was an outstanding deed of trust to secure money borrowed from certain school funds, and that at the time of the said fire this deed of trust was an outstanding lien and incumbrance on said property. The amended answer also pleads the following clause in the policy:

"If now or hereafter the premises described in this policy be or become vacant, unoccupied or uninhabited for more than thirty consecutive days; or if the risk be increased by any means within the knowledge of the assured; or, if the interest of the assured be or become other than the entire, unconstitutional and sole ownership of the property; or, if the personal property insured hereunder be or become incumbered by chattel mortgage; or, if the buildings insured be on ground not owned by the assured in fee simple; or if this policy be assigned, then and in every such case this policy shall be void, unless otherwise provided by agreement endorsed thereon.

"It is understood and agreed that no agent of this company has authority to waive any of the above conditions."

Further defendant states "that by reason of the interest of plaintiff being other than the entire, uncondi-

tional and sole ownership of the property, and by reason of the buildings insured being on ground not owned by plaintiff in fee simple, that said policy was void and of no force and effect.'' Further defendant ''denies that said buildings were wholly destroyed by fire as alleged in plaintiff's petition.''

Further the amended answer pleads payment to plaintiff of the sum of $500, in full for the insurance on his household goods and kitchen furniture and that at said time defendant tendered to plaintiff the sum of $25.20, which was the full amount of premiums paid. Further defendant states that plaintiff, in his proof of loss fraudulently and knowingly failed to state the true damage to the said insured buildings, and fraudulently and knowingly mis-stated the exact title and interest of others in and to said property.

The amended answer further pleads ''that if the plaintiff has any insurable interest in the insured property, such interest is an equitable lien against said property for the payment of the amount of said judgment; and that if plaintiff is entitled to recover in this suit at all, he is only entitled to recover for the protection of said equitable lien; and that if plaintiff recovers in this suit, defendant is entitled to be subrogated to the extent of such recovery to the rights of said Henry A. Ward in such equitable lien and in said judgment so rendered and entered of record in the circuit court of Gentry County, Missouri. Or, if said judgment be paid, then to the extent that same is paid same is a bar to plaintiff's recovery in this suit; and if such payment has been made either in part or in whole, such payment is pleaded by defendant as a bar to plaintiff's cause of action herein to the extent and amount of such payment and if payment has not been made thereon and it is found and adjudged by this court that plaintiff is entitled to recover anything under the policy of insurance mentioned in plaintiff's petition, then this defendant prays the court, by proper order and decree, to declare this defendant subrogated

to plaintiff's rights under said judgment so rendered by the Gentry County Circuit Court to the extent and amount that plaintiff may be entitled to recover from this defendant under and by virtue of said insurance policy."

The only questions for our consideration not determined in the prior opinion, above cited, are as follows:

First, as to whether or not error was committed by the trial court in finding that plaintiff had an insurable interest in the property, defendant claiming there was not sufficient evidence introduced to establish such interest. On this point, the pleadings, judgment and decree in the case of Shanklin v. Corydon L. Berry and Henry A. Ward, were introduced in evidence. The court found in that case that Ward (plaintiff herein) was a purchaser in good faith and that in equity he stands in the place of Corydon L. Berry who paid $2500 for the property which said sum went to the benefit of and was received by Shanklin by reason of the purchase of said property, which said sum in equity and good conscience should be declared a lien upon said property, together with simple interest thereon at six per cent. from May 3, 1900 to March 27, 1923, which said sum was declared to be $5935.

The State and county taxes paid by Berry from the year 1900 to 1918, in the sum of $1613.39, also were declared a lien. The purchase money, interest and taxes making a total sum of $7548.39, so declared a lien. The court also found that the rental value of the property at six per cent simple interest from May 3, 1900 to August 6, 1918, is $4055.62 which, being deducted, leaves $3492.77 which is declared a lien on said property. The judgment and decree further found that Henry A. Ward had paid interest in the sum of $72 upon a mortgage of $1800 borrowed from certain school funds, by Shanklin & Ward for sidewalks and other permanent improvements to the property. The total interest thus paid was $504, and that also is declared a lien on said property. Ward is thus declared to be the holder of an equitable lien against said property in the total sum of $3996.77.

That case was appealed to the Supreme Court and the opinion is reported in 236 S. W. 64. The only questions raised on that appeal are those relating to the character and extent of the equitable accounting, if any, that should be required at the hands of Shanklin. The court said, l. c. 67, 68:

"Appellant's first contention is that the defendant Ward has no legal or equitable claim against him for the $2600 paid by Ward to Berry as purchase money for the property in controversy. The court found that the $2,600 'went to the benefit and was received by the said Nathaniel Shanklin by reason of the purchase of said property.' There does not seem to have been any basis of fact for this finding. The evidence merely discloses that Berry sold the property to Ward for $2600, and that the latter paid that amount to the former who presumably applied it entirely to his own uses. It may be reasonably claimed that the $2500 paid to Hughes by Berry was used for Shanklin's benefit, but not the $2600 paid by Ward to Berry. It is obvious, therefore, that if Ward has an equitable claim against Shanklin with respect to the purchase money received by the latter's estate, it is one derived solely through Berry."

The opinion states further that Ward was a purchaser in good faith for full value without notice of any infirmity in Berry's title, and that "it may be said that the question here is not whether Ward acquired title through Berry's deed—it is conceded that he did not—but whether under equitable principles, he is entitled to have the land charged with the amounts expended by him in the payment of taxes and the making of permanent improvements. In the determination of that question the doctrine of constructive notice is without application. His good faith can be challenged only on the ground that he had actual knowledge of the defect in the title, or knowledge of such facts and circumstances as would have put a man of ordinary circumspection upon inquiry. [Brown v. Baldwin, 121 Mo. 106, 115, 25 S. W. 858.] As

was said by GOODE, J., in Gallenkamp v. Westmeyer, 116 Mo. App. loc. cit. 689, 93 S. W. 819:

" 'The essential matter in this connection is the good faith in which the improvements were made—the fact that the party in possession made them believing he had a good title; not that, by a recondite investigation, he might have ascertained he had a bad or a limited one.' "

The judgment of the trial court in that case was reversed and the cause remanded for a new trial on the ground that Ward should have been allowed the $2500 and interest, instead of $2600 paid to Berry, "with interest from February 28, 1905, and taxes from 1900 to 1918, inclusive, with interest, instead of for the years 1905 to 1918, and he should have deducted from the total of these amounts the rental value of the premises, with interest from May 3, 1900, to the time of entering the decree." The purport of the opinion is that Ward (plaintiff herein) is declared to have had an equitable interest in the property at the time the insurance policy was issued, and at the time of the fire. We are unable to agree with defendant, therefore, that there was no evidence showing that Ward had an equitable interest in the property. It cannot be refuted that an equitable interest in property is an insurable interest. [Welsh v. London Assurance Corp., 151 Pa. St. 607, 31 Am. St. Rep. 786; O'Brien v. Ins. Co., 95 Mo. App. 301; Nixon v. Ins. Co., 69 Mo. App. 351; Clark v. Ins. Co., 61 Mo. App. 181; Franklin v. Ins. Co., 42 Mo. 456.]

The question of total loss is properly in the case. Section 6229, Revised Statutes 1919, provides:

"In all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damages shall be the amount for which the same was insured," etc.

Under the decisions of our courts of appeal an insurance company may not be permitted to question the value of the property insured. Here the agent of defendant company knew the condition of the title and as decided in our former opinion in this case, defendant is held to have waived the question of title.

We hold, therefore, that the policy covered the full value of the property under the statute and plaintiff's equity therein to its full value. The testimony presented was ample to support the judgment of the trial court on this point. It is urged that if plaintiff ever had any lien upon the property in question, there is no evidence that the same had not been discharged at the time of the trial.

This contention is without merit for the reason that the question of discharge of the lien is a matter of defense, and this point was not taken advantage of by defendant. It is insisted that the judgment in the case of Shanklin v. Ward, did not settle the question of plaintiff's alleged lien as to the amount thereof, for two reasons: (1) Because defendant was not a party to that action, and (2) because that judgment was appealed from and therefore was not res adjudicata.

As above stated, the opinion of the Supreme Court in that case (236 S. W. 64) fully determined this question as between the parties, and so far as plaintiff's interests are concerned, that question is res adjudicata. The fact that defendant was not a party to that suit could have no effect upon plaintiff's declared interest in the property.

The only question remaining for our consideration is that of subrogation. It is insisted that the judgment is erroneous because the court failed to declare that defendant should be subrogated to the rights of plaintiff. It is admitted that defendant's right of subrogation, if any, is pro tanto to the extent of its payment, and if plaintiff's lien be greater than the amount of the insurance, that plaintiff's part comes ahead of that of defendant. With this admission it is seen that this question

already is determined in our holding that the amount of the judgment is not in excess of plaintiff's rights. More-over, it is shown by the record that the amount involved has not been paid. It is the general rule, applicable to actions based upon the ground of subrogation, that such right does not exist until the whole debt involved has been paid. [Maryland Casualty Co. v. Railroad, 124 N. E. (Ind.) 774.]

In Mathews v. Switzler, 46 Mo. 301, 303, the court said:

"The doctrine of subrogation or substitution has no application to the case. The creditor has not been paid, and until he is either paid or secured, the surety has no right to be substituted in his place." [See, also, Ames v. Huse, 55 Mo. App. 422.]

For the reasons herein stated, and finding no reversible error of record, we hold the judgment should be affirmed, and it is so ordered. All concur.