Beatrice **NELSON**, Appellant,

v.

**NEW HAMPSHIRE FIRE INSURANCE COMPANY**, a Corporation, Appellee.

No. 15999.

United States Court of Appeals
Ninth Circuit.

Feb. 11, 1959.

L. Charles Johnson, George R. Phillips, Pocatello, Idaho, for appellant.

J. F. Martin, C. Ben Martin, Boise, Idaho, for appellee.

Before STEPHENS, BONE and BARNES, Circuit Judges.

BONE, Circuit Judge.

This is a diversity case and comes to us on an appeal from a judgment of the District Court against appellant who was plaintiff below. The action involves an insurance contract entered into on or about June 12, 1956 between the parties,

whereby appellee agreed to insure a certain "trailer house" from loss by fire, lightning, transportation or theft in an amount not to exceed $5,000, in return for the premium paid by appellant. The trailer house was materially damaged by fire on or about September 23, 1956. Subsequent to this event, appellant made Proof of Loss to appellee, but upon investigation of the facts and circumstances surrounding appellant's acquisition of the aforementioned trailer house, appellee denied liability for the loss and tendered back the premium paid by appellant.

The trailer house here insured was manufactured by the Supreme Trailer Company of Bonham, Texas,[1] and on May 17, 1956, was in the possession of one Joseph Roberts, an employee of that company, for the purpose of delivering the said trailer to the Aetna Trailer Sales Company (hereafter Aetna) at a sales lot in Boise, Idaho, pursuant to the terms of a contract of sale between Supreme and Aetna. En route to Boise, and before reaching American Falls, Idaho, the trailer was slightly damaged but its value was not materially affected thereby.

On the said May 17, 1956, this Joseph Roberts, in company with one Albert Pauls [2] met appellant in American Falls, Idaho and there purported to sell to appellant the trailer house here involved for the sum of $2,000. Roberts and Pauls executed and delivered to appellant a Bill of Sale; the Bill of Sale was executed in the names of Roberts and Pauls and did not purport to be from Supreme, the then owner of the trailer house. The court found that neither Roberts nor Pauls had any right, title, or interest in the said trailer house or any right, or authority to sell or dispose of the same.

The lower court also found that appellant had been "in the market" for a trailer house for some time and was "ful-ly conversant" with the prices and values of trailer houses; that the trailer house in question was worth more than $4,000 at wholesale and nearly $6,000 at retail; that appellant made no substantial effort to ascertain the authority of the said Roberts and Pauls. The court concluded that appellant's purchase of the said trailer house was other than innocent.

Shortly after her acquisition of the trailer house, appellant began negotiating with appellee, through an authorized agent, to have the trailer house insured against loss from fire, lightning, transportation and theft. The said agent inspected the trailer and expressed an opinion that it was worth about $6,000. Appellant told him that she had not paid that much for it. In the ensuing conversation, it was agreed between appellant and appellee's agent that the house trailer should be insured for $5,000 though appellant never told appellee's agent what she had actually paid for the said trailer nor did appellee's agent ever ask what the purchase price had been. The resulting insurance policy, countersigned by the aforesaid agent of appellee on June 12, 1956, was for the period June 12, 1956 to June 12, 1957.

The lower court concluded that appellant acquired no insurable interest in the trailer house by virtue of the sale from Roberts and Pauls and that therefore she should take nothing from appellee by the instant action.

On this appeal, appellant contends: (1) that the court erred in finding lack of good faith on the part of appellant in making the purchase of the trailer; (2) that even if appellant did purchase the trailer in bad faith, the court erred in finding that she did not have an insurable interest in the said trailer; (3) that the court erred in failing to find that Supreme was bound by the act of

---

1. Supreme Trailer Co., in its sales transactions, operated through Southwest Mobile Homes Sales Corporation, a wholly owned subsidiary of Supreme Trailer Co. For purposes of this opinion, the two companies will be treated as one and will be referred to as Supreme.

2. A person unknown to the officials of Supreme and having no connection whatever with that company.

its agent, Joseph Roberts; (4) that even if the lower court properly found an absence of insurable interest on the part of appellant, that it erred in not finding appellee to be precluded from using this absence as a defense in the present suit.

## I

We conclude that the lower court's finding of fact to the effect that appellant was not an innocent purchaser of the subject trailer is adequately supported by the record. The only evidence to support appellant's claim of good faith, as an innocent purchaser, is her own testimony to the effect that she believed Roberts and Pauls when they told her that the price was so low because it was better to make a quick sale than to haul the trailer house back to Texas after Aetna rejected its delivery, as the said Roberts and Pauls claimed it (Aetna) would do.

Arrayed against this testimony are the inferences to be drawn from the fact that appellant purchased the trailer from complete strangers after seeing them for less than an hour; that she knew the trailer to be worth at least $2,000 more than she paid for it (the value shown on the invoice which Roberts and Pauls showed her was $4,276.70) and by her own testimony believed it to be worth $3,000 more than she paid for it; that appellant's vendors had no documents of title to show or deliver to her; that the invoice which Roberts and Pauls displayed to her clearly indicated the subject trailer was to be delivered to Aetna Trailer Sales; and that appellant's only effort to determine whether Roberts and Pauls had authority to sell the trailer was in the form of a question directed toward those persons.

This Court has often stated that a trial court has a great advantage in determining the facts because it hears the testimony and views the demeanor of the witnesses on the stand. We will not overturn a finding of fact unless it is clearly erroneous. Western Canada S. S. Co. v. United States, 9 Cir., 245 F.2d 921. The finding of the lower court that appellant was not an innocent purchaser is not clearly erroneous in this case since it was supported by competent evidence.

## II

It would appear that the question whether an insurable interest is conveyed *to* the vendee by a purchase of property under circumstances other than innocent *from* one who has no right, title or interest in the property or authority to sell the same, has never been determined by the Idaho Courts. We are obliged to look elsewhere to determine what the Supreme Court of Idaho might decide if such a question was presented to it in the posture here shown.

An "insurable interest" is defined by statute in the State of Idaho.

> " 'Insurable interest,' (property), shall mean every interest in property, or in relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest. An interest in property insured must exist when the insurance takes effect, and when loss occurs, but need not exist in the meantime." Idaho Code, § 41–201(14)

Appellant contends that this statutory definition *patently* includes any form of possession, including naked possession of the vendee of the nature found by the lower court in the instant case. She further contends that under Idaho law, she could be found liable under the present circumstances for the conversion of the subject trailer house in a suit by the true owner, and thus she would be damnified by the "contemplated peril" referred to in the cited statute.

It is generally held that a vendee takes no better title than that of his vendor. It has also been held that one who holds property under a conveyance which is absolutely void has no insurable interest in that property. Hartford Fire Ins. Co. v. Carter, 10 Cir., 196 F.2d 992, 995. In the instant case, the trial court found as a fact that appellant's vendors had no "right, title or in-

terest * * * or any right to sell or dispose" of the trailer house. This being the case it follows that the Bill of Sale to appellant was void and conveyed nothing to appellant. Appellant therefore acquired no insurable interest in the trailer house as a result of her purported purchase.[3]

Appellant has not pointed out nor have we been able to locate a case wherein a thief, or one who *knowingly purchases* from a thief, has been held to have an insurable interest. It has been suggested that a *thief* is denied such an interest solely on the ground of *public policy*. 32 Yale L.J. 497. If this is the case, those policy reasons would have no validity against one who *innocently purchases* from the thief, but as against a *knowing* purchaser, they would be as equally valid as against the thief himself.

The trial court found that appellant knew, or with the exercise of reasonable care would have known, of her vendor's lack of interest in and authority to sell the subject trailer house. We agree with the finding and conclusion of the trial court that appellant had no insurable interest in the said trailer house.[4]

### III

■■ Appellant's third major contention is that her "vendors," Roberts and Pauls, had *apparent authority* to sell the trailer house, and that under Idaho law, a principal is bound by the acts of his agents done within their apparent authority. Conceding that such may be the law of Idaho in an appropriate case, we find it inapplicable in the instant situation.

" * * * Apparent authority exists only with regard to those who believe and have reason to believe that there is au-

thority * * * " Restatement of Agency 2d, § 8, Comment (a) p. 31. The lower court found appellant knew or should have known of the lack of authority of her vendors. In this posture, apparent authority could not have existed as to this appellant.

### IV

Finally, appellant urges that appellee should be precluded from raising the defense of appellant's *lack of insurable interest* and that the court below erred in not so finding. Appellant appears to attempt to base this challenge to the judgment upon several grounds. She contends that this defense is based upon the incorrect assumption that the rule requiring insurable interest in an insured is for the protection of the insurer; that the rule was unnecessarily brought into the field of property insurance from the ancient English doctrine applying to *life insurance;* that the purpose of the rule with regard to life insurance was to protect the life of the person upon whom the insurance was taken out. Liberty National Life Ins. Co. v. Weldon, 1957, 267 Ala. 171, 100 So.2d 696, 708, 61 A.L.R.2d 1346. She urges that such a protection is not necessary in the present case.

■ The authorities seem to be in complete accord upon the proposition that the requirement of insurable interest in *insured property* is for the purpose of preventing the use of insurance as a means of wagering.

"In the belief that wagering withdraws the exertions of men from useful pursuits, wagering policies covering property in which neither party has an interest other than the one independently created by the wager have been uniformly invali-

---

3. "Possession of stolen property would * * * give no such title as would satisfy the average court." Appleman, Insurance Law and Practice, § 2125, v. 4, p. 27.
 " * * * a mere trespasser or intruder, or one who has no color of title to property, has no insurable interest in it." Richards on Ins. § 71, v. 1, p. 336.

4. We find it unnecessary to determine whether it is necessary to obtain a Certificate of Title in compliance with the Idaho Code in order to secure an insurable interest in a house trailer. Appellant here has no such interest regardless of whether such a Certificate is required.

**590**

dated in the United States on the ground of public policy. Gambling or wagering of any kind, particularly in the guise of an aleatory contract like insurance, is deemed to be contrary to good morals and conducive to harmful social and economic consequences." *Richards on Insurance,* 5th Ed. Vol. 1, § 65, p. 329.[5]

One who has no protectible interest in the insured object is not allowed to gamble upon the possibility of its destruction. As previously pointed out, a thief, or one who knowingly purchases from a thief, has no protectible interest. We must conclude that the instant case falls fully within the public policy reasons behind the requirement of an insurable interest in the insured property.

Appellant further asserts that appellee is estopped from using this defense by virtue of its agent's failure to investigate fully the circumstances of appellant's acquisition of the trailer at the time of entering into the insurance contract. She also argues that appellee's agent was fully warned of the existence of unusual circumstances surrounding the acquisition before the policy was entered into.

Testimony on both sides indicates that appellee's agent was informed that appellant paid less than $6,000 for the trailer. Since the full retail value of the trailer was only $5,895, this warning could not possibly put appellee on notice of circumstances of the character which actually existed. Any further evidence in the record that bears upon the giving of notice to appellee of the circumstances of her purchase, is found only in the unsupported testimony of appellant. This testimony is to the effect that appellant disclosed to appellee's agent the full story of her acquisition of the trailer and the price she paid for it. The lower court

obviously did not believe this testimony, specifically finding to the contrary,[6] and the record reveals substantial evidence to support the finding. It is not clearly erroneous. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A.

At no point does appellant show that she acted to her injury as a result of acts or words of appellee or its agents. The defense of lack of insurable interest was available to appellee.

Judgment affirmed.

---

5. See also, Appleman, Insurance Law and Practice, vol. 4, § 2121, p. 17; 44 C.J.S. Insurance § 175, p. 869; American Central Ins. Co. v. Kirby, Mo.App., 294 S.W.2d 556.

6. " * * * neither at that time [on

or about June 12, 1956] nor at any other time did she disclose to the defendant the circumstances surrounding the purported purchase by her of the trailer house nor the price paid therefor by her."