Josephine **COUNIHAN,** Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant.

No. CV 91–4281.

United States District Court, E.D. New York.

Aug. 4, 1993.

See also 142 F.R.D. 387.

Richard B. Lind, New York City, for plaintiff.

Richard J. Inzerillo, P.C., Smithtown, NY, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Josephine Counihan ("Plaintiff" or "Counihan") brings this action, pursuant to 28 U.S.C. § 1332, against Allstate Insurance Company ("Defendant" or "Allstate") seeking money allegedly owed to Counihan as a result of Allstate's breach of contract and bad faith refusal to pay Plaintiff's claim for property damage arising under an Allstate homeowner's policy. Now before the Court are motions by both Plaintiff and Defendant for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, Allstate's motion is granted and Counihan's motion is denied.

### I. Background

Counihan owned a fifty percent interest in a house located at 890 Noyac Road, Noyac, New York ("the property"). On December 9, 1988, she purchased an Allstate insurance policy ("the policy"), whereby Allstate agreed to insure Plaintiff against all risks of loss or damage to her premises and property. The insurance on the property was for an amount not to exceed $98,000.

In February 1989, the United States seized the property and sought its forfeiture, pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881,[1] in a case captioned *United States v. Certain Real Property & Premises Known as 890 Noyac Road* ("*Noyac Road I* "). The illegal drug activity giving rise to the forfeiture under § 881 occurred on July 22, 1988. On July 2, 1990, a judgement in favor of the United States was entered in this Court. On October 3, 1991, the United States Court of Appeals for the Second Circuit reversed the judgment of *Noyac Road I*

---

1. Section 881 provides in pertinent part:
   (a) Property subject
   The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   . . . .
   (7) All real property including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or

part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment. . . .
   . . . .
   (h) Vesting of title in the United States
   All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

and remanded the case back to this Court. *United States v. Certain Real Property and Premises known as 890 Noyac Road*, 945 F.2d 1252 (2d Cir.1991). On May 27, 1992, on retrial, a judgement in favor of the United States was again entered (*"Noyac Road II"*). Finally, on February 4, 1993, the Second Circuit affirmed the forfeiture in *Noyac Road II*.[2]

On November 1, 1990, there was a fire on the property, resulting in the total loss of the residence located there. The Allstate insurance policy was in effect on that date and Counihan has made a claim for coverage under the policy.

## II. Discussion

■ In this case of first impression, the question the Court must decide is as follows: where, under 21 U.S.C. § 881, insured property is forfeited to the government retroactive to a time prior to the purchase of the insurance policy, does such retroactive forfeiture also act to render the policy void through retroactive divestiture of the insurable interest in the property?

Were there no relation back provision in the forfeiture statute, that is, were the forfeiture deemed effective only as of the date of final judgement, there would seem to be no question that Counihan, who had purchased her policy and whose loss had occurred well before May 27, 1992, the date judgement was entered in *Noyac Road II*, could have recovered under the policy.[3] However, § 881(h) provides that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." Therefore, Counihan was divested of her interest in the property as of the date of the crime, July 22, 1988.

It is the purpose of § 881 to put teeth into the government's ability to combat the drug trade. *See United States v. A Parcel of Land, Buildings, Appurtenances, and Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, — U.S. —, —, 113 S.Ct. 1126, 1145, 122 L.Ed.2d 469 (1993) (Kennedy, J., dissenting) (purpose of forfeiture under § 881 is "the desire to lessen the economic power of … drug enterprises"). Were this Court to hold that, despite the retroactive operation of § 881 as to the property itself, insurance proceeds could be obtained where the property subject to forfeiture was destroyed, drug traffickers would have an incentive to commit arson in an attempt to avoid the effect of the forfeiture laws.[4]

Counihan, however, views this action as a typical defeasible title case. Relying on *Deck v. Chautauqua County Patrons' Fire Relief Ass'n*, 73 Misc.2d 1048, 343 N.Y.S.2d 855 (1973), she argues that "the proper theory in … cases of defeasible title is that the insured's claim to property is to be viewed as one of substance and provided it is not taint-

---

2. In this unpublished decision, the Second Circuit rejected Counihan's counterclaim for damages against the government. The court noted that "the issue is … moot because appellant has no property interest in the premises."

3. An *in rem* forfeiture proceeding is an action against the *res*, under the legal fiction that the forfeited object is itself the guilty party. *Various Items of Personal Property v. United States*, 282 U.S. 577, 581, 51 S.Ct. 282, 283, 75 L.Ed. 558 (1931); *see also Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–86, 94 S.Ct. 2080, 2090–93, 40 L.Ed.2d 452 (1974) (recounting the development of the law of forfeitures). The object subject to forfeiture is the defendant in such a proceeding; the *personal* rights of the object's owner are unaffected by an *in rem* forfeiture. Accordingly, if the *res* is destroyed, the government takes nothing.

    A contract of insurance is a personal contract between the property owner and the insurer. *McGraw–Edison Credit Corp. v. Allstate Ins. Co.*,

62 A.D.2d 872, 406 N.Y.S.2d 337, 339 (1978); *City of Utica v. Park–Mill Corp.*, 41 N.Y.S.2d 248, 252 (Sup.Ct.1943). *See generally* 4 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 2105 (1969). The contract is about the property, but is not equivalent to the property. It cannot be said that when the property is destroyed, triggering the insurer's contractual obligation to pay money, that money is substituted for the property; the money merely compensates the policyholder for loss of the insured object. In the instant case, the government has not sought forfeiture of the insurance proceeds. Moreover, as a non-party to the insurance contract, it can have no claim to be so compensated. *See Park–Mill*, 41 N.Y.S.2d at 252.

4. The Court notes that Allstate called the fire that destroyed Counihan's residence "suspicious in nature." (Brown Aff. Opp'n to Cross Mot. Ex. A at 2.)

ed with fraud should be protected regardless of its ultimate validity." [5] *Id.* 343 N.Y.S.2d at 871. In *Deck*, a written instrument purporting to be a contract for the sale and purchase of real property had been executed and delivered by the parties. The purchasers paid a substantial down payment, entered into possession, and were considered by all concerned to be vendees under a contract to purchase the property. They obtained a policy of fire insurance to protect their interest therein, and a major fire loss was thereafter sustained. It was subsequently determined, in independent litigation between the purchasers and the sellers, that the purported contract was not a binding agreement. The defendant insurance company then refused to honor the fire claim, and the insureds brought suit. The court held that the plaintiffs possessed an insurable interest, despite the prior judicial determination that the underlying contract was unenforceable. Counihan argues that her own insurable interest likewise be recognized, despite the ultimate defeasement of her title to the insured property.

The Court first notes that *Deck's* formulation of "the proper theory in ... cases of defeasible title" is not binding on this Court.[6] Moreover, *Deck* is clearly distinguishable. Although Counihan, like the plaintiffs in *Deck*, obtained her policy at a time when she appeared to be the owner of the property, no relation back doctrine was operative in *Deck*.

Defeasible title cases generally deal with the situation created when parties enter into a transaction flawed by some technical irregularity.[7] At the time of the transaction, the parties believe title has passed. Because of the technical flaw, however, the possibility exists that the transaction will be annulled at some time in the future. The defeasibility of the title is not due to any wrongdoing by the insured;[8] rather, it is the result of imperfect lawyering. Moreover, the rationale behind the requirement of an insurable interest—that wagering contracts are contrary to public policy, *see Nelson v. New Hampshire Fire Ins. Co.*, 263 F.2d 586, 589–90 & n. 5 (9th Cir.1959)—is not offended by allowing what had been believed to be the insured's valid insurable interest to remain valid.

The instant case, by contrast, deals not with the ordinary case of defeasible title, but with title which has been forfeited to the government in connection with the insured's illegal drug activity. Furthermore, as discussed above, the legislative purpose in enacting § 881 and public policy concerns favor a holding that the retroactive forfeiture of property under § 881 also acts to render any insurance policy on that property void through retroactive divestiture of the owner's insurable interest in that property.

Allstate maintains that Counihan is not entitled to the proceeds of the policy, arguing

---

**5.** *See also* Appleman, *Insurance Law and Practice* § 2184 ("The theory is, in such cases of defeasible title, that the claim to property is one of substance, regardless of its ultimate validity in the event of direct contest between vendor and purchaser, which contest may also never occur.")

**6.** In diversity cases, a federal court must ordinarily apply the substantive law of the state in which it sits. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *cf.* Rules of Decision Act, 28 U.S.C. § 1652 (state statutes binding on federal courts). However, "the Erie doctrine is inapplicable to claims or issues created and governed by federal law, even if the jurisdiction of the federal court rests on diversity of citizenship." *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 541 (2d Cir. 1956). As the instant case turns upon the construction of a federal statute, 21 U.S.C. § 881, this Court is free to afford *Deck* (which is not a New York Court of Appeal decision and therefore

would not bind this Court under *Erie*) and other New York state court decisions as much or as little weight as it sees fit.

**7.** *E.g., Still v. Travelers Indem. Co.*, 374 S.W.2d 95 (Sup.Ct.Mo.1963) (technically defective deed); *Ward v. Concordia Fire Ins. Co. of Milwaukee*, 218 Mo.App. 98, 262 S.W. 450 (1924) (purchaser from guardian of insane person did not obtain title because of defect in proceedings against insane person). *See generally* Appleman, *Insurance Law and Practice*, § 2184.

**8.** In rare cases, it has been held that even where the voidability of title was due to fraud by the grantee on the grantor, the insurable interest of the grantee was not defeated. *Cetkowski v. Knutson*, 163 Minn. 492, 204 N.W. 528 (1925); *Phoenix Ins. Co. v. Mitchell*, 67 Ill. 43 (1873). However, equitable considerations mandated the result in those cases, and the insured was required to turn over the insurance proceeds to the defrauded grantor.

that she lost her insurable interest in the property as a result of the forfeiture. Allstate relies on the Insurance Law of the State of New York, which provides that:

No contract or policy of insurance on property made or issued in this state, or made or issued upon any property in this state, shall be enforceable except for the benefit of some person having an insurable interest in the property insured. In this article, "insurable interest" shall include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage.

N.Y.Ins.Law § 3401 (McKinney 1985).

■ The New York Court of Appeals has defined an insurable interest as existing when a person "has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." *Scarola v. Insurance Co. of N.A.*, 31 N.Y.2d 411, 340 N.Y.S.2d 630, 631–32, 292 N.E.2d 776, 777 (1972). A lack of an insurable interest in the property insured renders the property insurance void and unenforceable. *Etterle v. Excelsior Ins. Co. of N.Y.*, 74 A.D.2d 436, 428 N.Y.S.2d 95, 96 (1980).

In light of the final judgement entered against Counihan, it is clear that at the time she purchased the policy, Plaintiff was not the owner of 890 Noyac Road. As a stranger, she would not "derive pecuniary benefit or advantage from its preservation, [nor] suffer pecuniary loss or damage from its destruction," and therefore had no insurable interest to support the policy she later purchased. *Scarola*, 340 N.Y.S.2d at 631–32, 292

N.E.2d at 777. Accordingly, this Court holds that under § 881, where property, otherwise duly insured, is forfeited to the government retroactive to a time prior to the purchase of the insurance policy, such forfeiture renders the policy void by retroactively divesting the policyholder of her insurable interest in the property.[9]

### III. Conclusion

Accordingly, for the reasons stated above, Plaintiff's motion for summary judgement is denied. Defendant's motion for summary judgement is granted.

SO ORDERED.

divested before she ever purchased the policy. She cannot "retain" an insurable interest that she never had to begin with.

Counihan further attempts to show that in New York, when an insurer seeks to disclaim liability "through a purported exclusion clause in the policy," the insurer must prove that the insured clearly is not covered by the policy. As the instant case has nothing to do with an exclusion clause, the Court summarily rejects this argument.

---

**9.** Plaintiff also contends that under New York law, a party can retain in insurable interest in property even when he no longer possesses legal title. *See Etterle*, 428 N.Y.S.2d at 96–97 (collecting authorities). While these cases do support the proposition advanced, that proposition is inapposite here. Allstate does not seek to avoid payment under Plaintiff's policy because her legal title, valid at the inception of the policy, terminated prior to the fire loss. Instead, Allstate relies upon the fact that Plaintiff's title was