WM. M. RANEY, ERNEST WILLIAMS, and W. S. CANDLER, Appellants, v. HOME INSURANCE COMPANY, Respondent.

Springfield Court of Appeals, December 6, 1922.

1. **FRAUDULENT CONVEYANCES: Father's Deed to Minor Son to Defeat Creditors was Binding Between Father and Son.** Father's deed to minor son to defeat creditors, though void as against creditors, was binding between the father and son, and completely divested the father of all ownership in the land.

2. **STATUTE OF LIMITATIONS: Father Who Had Conveyed Land to Minor Son to Defeat Possible Judgment Could not Hold Adversely Until Son Reached Majority.** A father, after making a deed to his minor son who, by reason of his minority, was incapacitated to assert his own ownership, could not hold the land adversely to his minor son; therefore the Statute of Limitations could not be set in motion until the son reached his majority.

3. **INSURANCE: Insurable Interest: Equitable Owner.** Where father conveyed land to minor son to defeat a possible judgment against him, and the son, on reaching his majority, conveyed the land to the mother, but the father, after conveyance to son, continued to use and claim the land as his own, and to improve it with his own means, and neither the son nor the mother paid anything for the land or asserted any claim thereto, the husband

did not have an insurable interest on the theory that he was the equitable owner.

4. ———: Insurable Interest on Theory of "Bona-fide Claimant." Where a father conveyed land to a minor son who, on reaching his majority, conveyed it to the mother, and the father continued to claim the land and use it as his own and to approve it with his own means, the father did not have an insurable interest on the theory that he was a bona-fide claimant, since a bona-fide claimant as owner is one who supposes that he has good title and knows of no facts which would convince a reasonably prudent man otherwise.

5. DEEDS: Delivery and Acceptance by Grantee Presumed Where Deed was Placed on Record, and Not Rebutted by Grantee's Ignorance of Conveyance. Where father conveyed land to a minor son for a fraudulent purpose and placed the deed on record, both delivery and acceptance will be presumed, and the fact that the minor son paid nothing for the land and never had physical control of the deed and did not know until long afterward that the deed had been executed would not rebut that presumption.

6. EVIDENCE: That Son, to Whom Father Had Fraudulently Conveyed, Told Notary to Reconvey to "His Folks," was Inadmissible to Prove Ownership in Father Where Deed was Mistakenly Made to Mother. Where father fraudulently conveyed land to his minor son who, on reaching his majority, had conveyed the land to his mother, the son's testimony that he instructed the notary to make it to "his folks" and that his mother's name, only, was inserted in the deed by the notary without his knowledge, *held* properly excluded, since what the son told the notary when the deed was written did not confer any right on the father whose name did not appear therein.

7. ———: Mother's Testimony, to Whom Son Conveyed Land Fraudulently Conveyed to Him by Father, That She Never Made Any Claim to it, Held Inadmissible to Prove Ownership by Father. Where father fraudulently conveyed land to his minor son who, on reaching his majority, conveyed the land to the mother, the mother's testimony that she had never claimed the land and that the insured had rented it and collected the rent in her presence and without objection on her part, *held* properly excluded, since such testimony could not have proven any right in plaintiff to the land.

8. JUDGMENT: Judgment in Suit to Quiet Title, Decreeing That Title was in Defendant Father and Son, Held Inadmissible in Another Action to Prove Ownership in Father as Against Son. A judgment in a suit to quiet title against the insured and his minor son, decreeing that the plaintiff in such action had no title

and that the title was vested in the insured and his son, *held* not admissible to prove ownership in the insured as against his son.

9. **JUDGMENT: Duty of Court to Construe Judgment Offered in Evidence in the Same Manner on Any Other Written Instrument: Reference Must Be Had to Pleadings in the Case.** Where a judgment is offered in evidence to prove prior adjudication of the question involved, it is the duty of the court to construe the judgment and interpret its meaning the same as any other written instrument that may be offered in evidence, and in determining what is meant by the language used in the judgment, reference must be had to the pleadings in the case and the issues to be tried must be ascertained, before it can be determined what the judgment means; since, if the judgment determines a matter not in issue and adjudicates rights of the parties in a manner not warranted by the pleadings, that portion of the judgment may be collaterally attacked.

10. **JUDGMENT: Portion of Judgment not Warranted by Pleadings Subject to Collateral Attack, in Absence of Estoppel or Equitable Right Growing Out of Judgment.** If a judgment determines a matter not in issue and adjudicates rights of the parties in a manner not warranted by the pleadings, that portion of the judgment is void and may be collaterally attacked, in the absence of estoppel or some equitable right growing out of the judgment.

Appeal from Wright County Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*A. M. Curtis* and *C. H. Jackson* for appellant.

*E. L. Snider* and *Lamar & Lamar* for respondent.

COX, P. J.—Action upon a fire insurance policy covering a dwelling house and certain personal property. Trial by jury; verdict for plaintiffs as to the personal property and for defendant as to the dwelling house. The verdict for defendant on the issues joined as to the dwelling house was the result of a peremptory instruction by the court that plaintiffs could not recover for the loss of the dwelling house. From that action of the court

plaintiffs appealed. No appeal was taken from the judgment in plaintiffs' favor for the loss of the personal property.

The only question before us is the propriety of the trial court's action in instructing the jury that plaintiffs could not recover for loss of the dwelling house. The issuance of the policy and the destruction of the property by fire was admitted and the defense was misrepresentation by the insured in the application for insurance and that the applicant, Wm. M. Raney, had no insurable interest in the property at the time the policy was issued nor at the time of the fire. The action of the trial court in giving a peremptory instruction to find for defendant as to the claim for the loss of the dwelling house appears to have been founded on the proposition that the applicant for the insurance, Wm. M. Raney, had no insurable interest in the property and it is to that question we shall direct our attention.

The plaintiff Williams was interested in the personal property only. Plaintiff Candler came into the case as a mortgagee with a loss clause making the loss payable to him but subject to all the terms of the policy, so the question involved, as before us, is in the same form as if Wm. M. Raney were the only party plaintiff.

The application for this insurance was signed by Wm. M. Raney and among the questions to be answered were questions as to the title to the land on which the dwelling house was located and the answers were to the effect that Mr. Raney was the owner. Raney claimed that he detailed all the facts to the agent of defendant who wrote in the answers to the questions and that he did not read the application after it was filled out but signed it without examining it. While he testified that he gave the agent all the facts relating to the title, he also testified that he told the agent the property belonged to him and as to this latter statement he seems to be of the opinion now that he in fact owns the land.

Assuming as true the statement of plaintiff, Wm. M. Raney, that he has claimed all the time that he was the

owner of the land and that he was in possession of it by tenant and collected the rents and had the land assessed in his own name and paid the taxes thereon, we then have the following additional facts admitted by Mr. Raney to consider in determining whether or not he had any insurable interest in the property. In 1904 Mr. Raney was the owner of the land. In that year he was sued by one William Brown and fearing that Brown might recover a judgment against him, he conveyed this land to his minor son, C. E. Raney, and placed that deed on record for the purpose of preventing Brown from selling it to collect any judgment that might be rendered in that case. The son was then nine years old and the title remained in him until he became of age and then the father requested him to reconvey the property. The son did execute a deed in 1916 but instead of conveying it to his father, he conveyed it to his mother, Phurnia Raney. Just how the deed came to be made to the mother alone instead of to the father or to both does not clearly appear but the father learned that the deed had been made to the wife Phurnia Raney and had been recorded long before this insurance was applied for and he had taken no steps to have it corrected. He testified, as did others, that he claimed all the time to own the property and neither the wife nor the son ever made any claim to it. Some other testimony was offered by plaintiff but excluded, which we shall notice later.

On the above recited facts, plaintiff Raney contends that he had an insurable interest in the property on several grounds.

First: By adverse possession which he claims had ripened into title under the Statute of Limitations.

Second: That if the legal title had not vested in him by limitation, he was at least the equitable owner of the land and that his wife and son in whom the legal title was held, were trustees for him.

Third: That he was in possession holding adversely under a bona-fide claim of ownership and if he had no title in fact, yet the facts relating to the deeds to his son

and wife were detailed to the agent of defendant and the defendant is now estopped to deny that Raney had an insurable interest in the property.

It is apparent at a glance that Wm. M. Raney had not acquired any interest in the land under the Statute of Limitations. Having himself conveyed the land to his minor son to defeat a possible judgment against him the full and complete title was conveyed to the son. While this deed was void as against creditors, it was binding between the father and son and completely divested the father of all ownership in the land. When he made that deed, he knew that neither he nor the minor son would be able, of their own volition, to change the title or ownership of the land until the minor son should reach his majority. After making that deed, he could not hold the land adversely to his minor son who, by reason of his minority, was incapacitated to assert his own ownership of it. The Statute of Limitations therefore could not be set in motion until the son reached his majority. When the son did come to full age, the father requested a reconveyance of the land and the son acceded to the request, but the notary in writing the deed placed the name of Phurnia Raney, the mother of this son and wife of plaintiff Wm. M. Raney, as grantee in the deed instead of plaintiff Wm. M. Raney. The most that can be said in his favor as to the Statute of Limitations is that it may have begun to run as soon as the son came of age but that was in 1916, only four years prior to the time this policy was issued. It is not necessary for us to determine in this case whether or not the Statute of Limitations could run in plaintiff's favor against his wife, for if we concede that it could and did run against her, a question which we do not decide, yet it had not run a sufficient length of time to give plaintiff any rights under it. The contention of plaintiff, Wm. M. Raney, that he had acquired an interest in or title to the property under the Statute of Limitations, must be ruled against him.

Wm. M. Raney's next contention is that he was the equitable owner and that his son and wife, who held the

legal title, held as trustees for him. This contention is based on the fact that neither the son nor the wife paid anything for the land and never asserted any claim to it and that he used it as his own, claimed it as his own, improved it with his own means, paid the taxes on it and with his own money had built the house that was insured. That when he applied for the insurance, the agent of defendant was told of the deed from him to his son and from the son to his wife and since the agent of defendant knew that he was bona-fide claiming to own the land and knew the facts as to the deeds mentioned, the defendant is now estopped to assert that there was any misrepresentation or that he had no title to the land. If Wm. M. Raney owned an insurable interest in the property either legal or equitable or was a bona-fide claimant of ownership at the time the policy was issued and the agent of defendant was informed of the facts, that contention would be sound. His claim as the legal owner depended on the Statute of Limitations which we have already held gave him no title. We are equally clear that he had no equity in the land. The fact that he expended money in making improvements on the land can avail him nothing because he knew at the time the expenditures were made that the title was in another. If the house had not been destroyed by fire and Phurnia Raney, in whom the legal title rested, had ejected Wm. M. Raney, he could not have forced her to pay for the improvements for the very reason that he knew that she or her grantor, the son, was the owner of the land when he made the improvements. [Lee v. Bowman, 55 Mo. 400; Brown v. Baldwin, 121 Mo. 106, 25 S. W. 858; Marlow v. Liter, 87 Mo. App. 584; Richmond v. Ashcraft, 137 Mo. App. 191, 117 S. W. 689.]

Neither can it be said that he bona-fide claimed to be the owner. A bona-fide claimant as owner is one who supposes that he has good title and knows of no facts which would convince a reasonably prudent man otherwise. If he knows the facts and still honestly believes that he has title, it will avail him nothing, for in that

case the bona-fides of his claim of ownership must be based on the legal effect of the facts as known to him and not on his opinion of the law to be applied under the known facts. [Richmond v. Ashcraft, 137 Mo. App. 191, 200, 117 S. W. 689.]

Plaintiff offered to prove by C. E. Raney, the minor son, that he had no knowledge that his father had conveyed the land to him for a long time after it was done; that he paid nothing for the land; that the deed was never delivered to him and he never made any claim of ownership to it. Had this evidence been admitted, it would not have strengthened plaintiff's case. The deed having been made for a fraudulent purpose and placed on record by him, both delivery and acceptance will be presumed and the fact that the minor son paid nothing for the land and never had physical control of the deed and did not know until long afterward that the deed had been executed would not rebut that presumption.

Plaintiff also offered to prove by the son that when he went to the notary to have a deed written to reconvey the land that he instructed the notary to make it to "his folks" and that his mother's name, only, was inserted in the deed by the notary without his knowledge. This was excluded and we think properly so. The father had learned that the deed was made to his wife long before he applied for this insurance and took no steps to change it. The father paid the son nothing for making the deed. The conveyance was voluntary on the son's part and there was nothing about the transaction that gave the father any equity in the land or conferred upon him any rights in relation to it. Had he brought suit to reform the deed he could not have succeeded against the objection of the son so there is no point of view from which it can be said that what the son told the notary when the deed was written would confer any right on the father whose name did not appear in the deed.

Plaintiff also offered testimony that Phurnia Raney, to whom the son conveyed the land, never made any claim to it and that plaintiff had rented the land and collected

the rent in her presence and without objection on her part. This testimony was also excluded but had it been admitted, it would not have proven any right in plaintiff to the land. A person cannot convey land by merely remaining quiet while another claims it or by refusing to assert his own right to it. This testimony could have had no possible effect except as bearing on the question of plaintiff's adverse possession and since his possession since the son had reached his majority was not of sufficient duration to confer any right upon him, this testimony was properly excluded.

Plaintiff Wm. M. Raney offered in evidence the petition, summons, answer and judgment in a case tried in the Circuit Court of Wright County in 1911 in which E. E. Lugenbeal was plaintiff and among others Wm. M. Raney and C. E. Raney, the minor son of Wm. M. Raney were defendants. This was a suit to quiet title. Summons was duly served on both Wm. M. Raney and the minor son, C. E. Raney. At the trial no guardian *ad litem* was appointed for the minor but the service of summons upon the minor gave the court jurisdiction of his person. A joint answer was filed for Wm. M. Raney and C. E. Raney by attorney and no mention made of the fact that C. E. Raney was a minor. In this answer it was denied that the plaintiff had any interest in the land and then asserted that they held the title under the Statute of Limitations and asked that they be declared the owners. The judgment followed the language of the answer and decreed that plaintiff, Lugenbeal, had no title but that the same was vested in defendants Wm. M. Raney and C. E. Raney. On objection the pleadings, summons and judgment in that case were excluded and this is assigned as error. It is contended that the judgment being regular on its face is not subject to collateral attack and should have been admitted because it was an adjudication that defendants Wm. M. Raney and C. E. Raney were the owners in common of the land and was therefore some evidence that Wm. M. Raney owned some interest in the land at that time and there being no evi-

dence of a change in ownership thereafter as to Wm. M.
Raney, it would warrant a finding that he had some inter-
est in the land when the insurance policy was issued.
The position that a judgment regular on its face cannot
ordinarily be collaterally attacked is sound but it does
not necessarily follow that every recital in the judgment
or every provision of the decree must stand as a solemn
adjudication of the court in every proceeding in which
the judgment may be offered in evidence. It is always
the duty of the court to construe the judgment and in-
terpret its meaning the same as any other written in-
strument that may be offered in evidence and in deter-
mining what is meant by the language used in the judg-
ment, reference must be had to the pleadings in the
case and the issues to be tried must be ascertained before
it can be determined what the judgment means. If the
judgment determines a matter not in issue and adjudi-
cates rights of the parties in a manner not warranted by
the pleadings, then, in the absence of estoppel or some
equitable right growing out of the judgment, that por-
tion thereof that is not authorized by the pleadings is
void and may be collaterally attacked. [Charles v.
White, 214 Mo. 187, 112 S. W. 545.]

In the case in which the pleadings and judgment
were offered by plaintiff, there was no issue between the
defendants, Wm. M. Raney and C. E. Raney. They mere-
ly joined in a common defense against the plaintiff in
that case and as far as the minor C. E. Raney was con-
cerned without any steps being taken to protect his
interest against any claim of his father. The father had
deliberately placed the title in the son for a fraudulent
purpose and with full knowledge at the time that it must
remain there until the son should reach his majority and
when that title was attacked by a stranger, it was his
duty as the father and natural guardian of the minor to
have come to its defense and he will not now be permit-
ted to say that he abandoned that duty and that he in-
tended by having a joint answer filed in which it was al-
leged that "they," meaning himself and his son, were

the owners, to thereby fix a basis for a decree that he could afterward claim adjudged some title in him. Had he desired to have any rights as between himself and his minor son adjudged in that case, he should have raised an issue on that point in the answer and since he did not, the court was without jurisdiction to adjudge any rights as between them and if the recital of the judgment that "they" meaning Wm. M. Raney and C. E. Raney were the owners of the land is to be considered to mean that Wm. M. Raney had any interest therein, the court was without power to so decree because not authorized to do so by the pleadings in the case. The objection to the admission of the pleadings and judgment in that case was properly sustained.

In most of the essential features in this case, it is very similar to the case of Wisecup v. Insurance Company, 186 Mo. App. 310, 172 S. W. 73, decided by this court and we adhere to the holding then made.

The judgment will be affirmed. *Farrington* and *Bradley, JJ.,* concur.