LUMBERMENS MUTUAL INSURANCE
COMPANY, Appellant,

v.

Stanley C. EDMISTER and Dorothy Mae
Edmister, Appellees.

No. 19370.

United States Court of Appeals
Eighth Circuit.

June 18, 1969.

Glenn E. McCann, of Knipmeyer, McCann & Millett, Kansas City, Mo., for appellant and filed brief.

Clem W. Fairchild and Herbert M. Kohn, of Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, Mo., for appellees; Donald F. Price, Kansas City, Mo., was on the brief.

Brief of amicus curiae was filed by William H. Sanders and David C. Trow-bridge, of Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

The defendant Lumbermens Mutual Insurance Company appeals from a judgment in favor of plaintiffs, Stanley C. and Dorothy Edmister, entered by the District Court for the Western District of Missouri on a fire insurance policy issued by defendant. The judgment was for $26,000 plus $6175 interest. Trial was by the Court, a jury being waived. This is a diversity case in a requisite amount and the substantive law of Missouri applies.

The defendant issued its three-year renewal fire policy for $26,000 on a dwelling owned by the plaintiffs, effective as of March 23, 1963, and received a premium of $265.68. The insured premises were located on a 5½ acre tract, which was part of a larger tract of 58 acres, located near Greenwood, Missouri. Plaintiffs sold the insured premises to Edward J. and Dorothy Wenski under a contract of sale dated August 3, 1963. A warranty deed was duly executed and delivered to the Wenskis on October 18, 1963 and recorded on October 28, 1963. The sale price of $25,500 was paid to the sellers as follows: $500 (services rendered), $13,000 cash received from a mortgage placed on the property by buyers,[1] and a note in the amount of $12,000 secured by a second mortgage (deed of trust)[2] on other real property owned by the Wenskis. Under the real estate contract the sellers were to deliver possession of the premises by November 1, 1963 but apparently an oral revision of the sale contract was made and the plaintiffs remained in possession of

1. The contract of sale recites that $500 cash was paid to sellers but Mr. Edmister testified this was paid by services previously rendered by Mr. Wenski. The $13,000 proceeds of the mortgage placed on the property were used to pay off a mortgage on the entire tract owned by sellers.

2. Missouri law provides for the deed of trust form of security on real estate loans, and the word "mortgage" is utilized in this opinion in the conventional connotation to cover all types of security liens.

the property and made the monthly payments of $146 on the mortgage placed on the insured premises by the buyers. This payment covered amortization of taxes and insurance in addition to payments on principal and interest, and was found by the District Court to be in lieu of rent.

The defendant, through its agent H. L. Peck, was informed on November 1, 1963 by the new mortgagee that the Edmisters no longer owned the property. The agent telephoned the Edmisters to inquire about cancelling the policy and was informed by Mr. Edmister that the plaintiffs continued to hold an interest in the property and that the policy should not be canceled. On March 2, 1964 the insured dwelling was totally destroyed by fire.

The Wenskis had at the time of the sale insured the dwelling for $25,000 with another insurance carrier. Insurance due under Wenski's policy was paid in full, the proceeds being used to pay off the mortgage on the destroyed dwelling and to pay off the $12,000 note and mortgage plaintiffs held on the Wenskis' other property. Later for $1250 plaintiffs bought back the land originally conveyed to the Wenskis.

The principal issue is whether the plaintiffs had an insurable interest in the dwelling that was insured by defendant's policy at the time the fire occurred. There are ancillary issues raised by defendant of breaches of policy terms and conditions along with other issues that need not be discussed, as we are of the opinion that the original insurable interest terminated upon sale of the property and thus plaintiffs did not have an insurable interest at the time of the fire that was insured under the policy in question.

When plaintiffs took out the policy they were the fee owners. On disposing of the fee and receiving the consideration set forth in the sale contract they ceased to hold the insurable interest or any interest in privity that was covered by the insurance contract.

It is axiomatic in Missouri, as in most states, that a valid insurance contract must be based upon an insurable interest. It is true that an insurable interest need not be a fee simple holding or an absolute ownership of property. It may cover a variety of holdings or rights in real and personal property. The Missouri courts recognized this, agreeing with the comment in 44 C.J.S. *Insurance* § 175, at 870 (1946) that it is not easy to define an insurable interest with precision so as to distinguish it from the class of wagering policies, but that generally a person has an insurable interest when he has such a relation or concern with the subject matter insured that he will derive pecuniary benefit or advantage from its preservation or suffer pecuniary loss or damage from its destruction. American Central Ins. Co. v. Kirby, 294 S.W.2d 556 (Mo. App.1956) quoted with approval the case of Crossman v. American Ins. Co., 198 Mich. 304, 164 N.W. 428, 429, L.R.A. 1918A, 390 (Mich.1917), which in discussing an insurable interest said:

"* * * [An insurable interest] may be a special interest entirely disconnected from any title, lien, or possession. If the holder of an interest in property will suffer direct pecuniary loss, by its destruction, he may indemnify himself therefrom by a contract of insurance. The question is not what is his title to the property, but rather, would he be damaged pecuniarily by its loss."

The plaintiffs seek to predicate an insurable interest not upon their former fee ownership which constituted a valid insurable interest at the time of the issuance of the policy but upon the following factors: (1) possession and occupancy of the house as a dwelling place, (2) use of the house as headquarters for plaintiffs' farming, tax service, and contemplated housing development businesses, (3) purchase of materials and labor used in improvements on the house, (4) payment of approximately $233.42 in

closing costs resulting in a vendor's lien against the house. [3]

The plaintiffs had some agreement with Edward J. Wenski concerning the development of the remaining acreage of the original tract of 58 acres. Wenski was to apply his ability as a carpenter to the building of houses while Edmister retained possession of the dwelling in question and directed the sub-development business. In order to make more attractive the overall subdivision area the plaintiffs paid for some improvements on the house they had sold to the Wenskis. [4] Edmister at the time of the sale also used the dwelling to operate a family farm enterprise on the premises and an income tax service. [5]

■ We do not view the plaintiffs' status as tenants or the use of the insured dwelling as headquarters for plaintiffs' farming operations and tax service as sufficient to constitute an insurable interest under the defendant's policy covering this property. Nor would the purchase of material and labor used in remodeling the property in the approximate amount of $1500 or the vendor's lien for $233.42 closing costs be a sufficient predicate to sustain the insurable interest which the defendant originally undertook to insure.

The use of the insured premises as headquarters for farming operations or income tax service could not properly be the basis for insuring the total value of the building. This would constitute a gambling contract. The defendant's policy insured the building and not the businesses or the interruption of the businesses conducted by plaintiffs.

■ Any of the interests above mentioned could possibly be the predicate for an insurable interest when properly disclosed to an insurer who would then know what it was insuring and the approximate value of that interest. A tenant from month to month or a lessee has an insurable interest if the loss of the property would cause pecuniary injury to him. See 44 C.J.S. Insurance § 189(b) (1946).

The improvements made on the building by plaintiffs were insurable. See 44 C.J.S. Insurance § 189(b) (1946). The Missouri case of Bernhardt v. Boeuf & Berger Mut. Ins. Co., 319 S.W.2d 672 (Mo.App.1959) recognized an insurable

3. The trial court in its unreported opinion found:
"* * * [P]laintiffs were tenants in the insured property; the husband had an established accounting business in the insured property; a profitable truck-farming enterprise was conducted on the property; and the insured premises were the focal point and headquarters for a subdivision project of the plaintiffs', so much so that they expended their own money to improve the house to make it attractive to potential buyers in the adjoining proposed subdivision."
(The evidence is somewhat conflicting on expenditures as many of the expenditures were made for the subdivision development but apparently $1449.15 was spent for remodeling of the insured premises.)
The status as tenants along with the other factors enumerated above made it obvious to the trial court that the plaintiffs would "derive pecuniary benefit or advantage from its [the insured property] preservation" and "suffer pecuniary loss or damage from its destruction." The trial court found that the plaintiffs had an insurable interest in the premises and that while this interest could not possibly be worth $26,000 the defendant could not raise the question of value after a total loss under the Missouri "valued policy" statute. The trial court relying on M.F.A. Mut. Ins. Co. v. Southwest Baptist College, Inc., 381 S.W.2d 797 (Mo.1964), viewed the "valued policy" statute as a part of each contract of insurance, and as putting at rest the measure of damages in a suit on a fire insurance policy and foreclosing any question of unjust enrichment. The Court then disallowed plaintiffs' prayer for penalties and attorney's fees for vexatious delay because of the novel questions presented by this case.

4. Defendant raises an issue that these amounts were paid by a Sub-Chapter S corporation controlled by plaintiffs and not paid by plaintiffs personally. We do not reach this issue.

5. The defendant claims the income tax business and the farming operation were in violation of the policy terms and conditions. We do not reach this issue.

interest in a house built on the land of another with the landowner's permission. And a vendor's lien against property is sufficient basis for an insurable interest in the nature of a mortgage. Mahan v. Home Ins. Co., 205 Mo.App. 592, 226 S.W. 593 (1920). The plaintiffs probably had a vendor's lien for the unpaid part of the purchase price of $12,000. Barnhart v. Little, 185 S.W. 174 (Mo.1916). But this amount has been paid and is not in issue in this case. At the time of the sale the plaintiffs had relinquished their fee ownership and actually had no insurable interest aside from their claim for payment of the purchase price (which was subsequently paid) and possibly for the advancement of closing costs in the amount of $233.42. This latter amount is certainly not sufficient to support a policy for $26,000. After the sale the property was held at the risk of the buyer. Mahan v. Home Ins. Co., *supra.*

Apparently plaintiffs are advancing the theory that the mere establishment of any type of insurable interest in the insured property obligates the insurer to pay the face amount of the policy even though the policy was issued under substantially different circumstances. We do not believe that to be the law of Missouri nor has the plaintiff cited any appellate cases upholding a recovery on the tenuous factual basis of this case.

Missouri's statutory policy on stated value of fire policies is set forth in § 379.140, V.A.M.S., and in pertinent part reads:

"In all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the

property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant; * * *"

Under the statute it is clear that an insurance company cannot question the value of the property insured. La Font v. Home Ins. Co., 193 Mo.App. 543, 182 S.W. 1029 (1916); Ward v. Concordia Fire Ins. Co., 218 Mo.App. 98, 262 S.W. 450 (1924). And on a total loss the issue of the measure of damages is put at rest. Michigan Fire & Marine Ins. Co. v. Magee, 240 Mo.App. 767, 218 S.W.2d 151 (1949). But this does not mean that when the insured has disposed of his insurable interest in property or has materially altered that interest that the insurer cannot question whether the original insurable interest has been terminated. Ward v. Concordia Fire Ins. Co., 211 Mo.App. 554, 244 S.W. 959, 961 (1922).

The defendant here is not questioning the value of the dwelling destroyed by fire but properly is questioning whether plaintiffs had an insurable interest at the time of the fire sufficient to support a recovery under the policy. The original policy and its renewals were issued when plaintiffs were fee owners of the property. That interest had terminated. The insurer was not advised or consulted about insuring any new type of partial interest plaintiffs intended to hold in the conveyed property or given the opportunity to issue a new policy commensurate with whatever that interest might be. Certainly if the plaintiffs had moved or given possession of the property as it was indicated they were to do under the real estate contract, they would no longer have had any insurable interest in the property, except such as could be covered under a mortgagee's policy.

The fact that the insurance company's agent called the plaintiffs about cancelling the policy upon learning of the sale should not place upon the insurer the

burden of ascertaining the drastic change in the insurable interest of plaintiffs but, rather, full disclosure should have been made to the insurer by the assureds if they desired coverage. The mere statement of the plaintiffs to the defendant's agent not to cancel the policy because they still had an interest in the property was misleading and an unfair representation of that interest. Normally upon receiving such a reply the agent could properly assume that the real estate deal had not been fully consummated and the plaintiffs still retained an insurable interest commensurate with the interest they had at the time the policy was issued or at least some recognized and definable interest that was again commensurate with the risk undertaken by the insurance company.

Missouri courts have held that: "* * * a material misrepresentation by the applicant will void a policy written upon the basis of such misrepresentation * * *." Cohen v. Ft. Dearborn Cas. Underwriters, 221 Mo.App. 741, 285 S.W. 1024, 1026 (1926). Likewise a material misrepresentation should void the continuation of a policy when the insured's insurable interest has ceased or has been substantially altered or changed, as in the present case.

The Missouri courts have also held that a mere mistake in the insurer's understanding of the insured's interest would be at the risk of the insurance company (La Font v. Home Ins. Co., *supra*); an unauthorized contract of sale would not terminate the seller's insurable interest in property (Hunt v. United States Fire Ins. Co., 239 Mo.App. 625, 193 S.W.2d 778 (1946); and the inadvertent retention of a fire insurance policy which resulted in an overinsurance on the owner's building would not constitute grounds for cancellation of the policy where there was no provision that the procurement of other or additional insurance would effect a cancellation of the policy (M.F.A. Mut. Ins. Co. v. Southwest Baptist College, Inc., 381 S.W.2d 797 (Mo.1964) ). However, we are not confronted with mere inadvertence or a mistake by the insurer in evaluating the assured's interest, but rather with a material misrepresentation.

The M.F.A. Ins. Co. case relied upon by the trial court as the basis for its decision in construing the effect of the Missouri "stated value" policy statute V.A.M.S. § 379.140 and related statute V.A.M.S. § 379.145 which provides that when fire policies are issued by more than one company on the same property, the insurer may not question the aggregate of the several amounts for which the property was insured "unless willful fraud or misrepresentation is shown on the part of the insured in obtaining such additional insurance;", and related statute V.A.M.S. § 379.160(3), which permits a co-insurance clause with a consequent reduction in rate, does not appear to cover the factual situation in the case at bar as the original fee ownership of the insured, which was the basis of the insurable interest, remained intact and unchanged.

■ Also mere knowledge of defendant insurer about the sale would not constitute a waiver as there was nothing to waive. As held in Mahan v. Home Ins. Co., 205 Mo.App. 592, 226 S.W. 593, 594 (1920):

"The fact that defendant's agent had knowledge of the sale by plaintiff and made no objection ought not to be considered a waiver because there was nothing to waive. If plaintiff parted with all right or interest in the property, any insurance thereon in her favor would cease. It would be no less than to allow her to insure the property of Jones, which she could not do."

■ The trial court held that when, "Edmister told defendant's agent not to cancel the policy because he still had an interest in the property, it was the duty of the agent to inquire and determine the value of that interest, since the agent knew the interest was not legal title." Although defendant's agent might

have been more inquisitive about the interest claimed, he should not bear the entire burden for failing to investigate this matter. Only plaintiffs had full knowledge of what their claimed interest might be and if substantially different from the original fee interest, or its equivalent in equitable claims or title, it should have been disclosed. The insurer is certainly entitled to know whether it is insuring a building in which the assured has a full interest or only a fractional one. To permit a holder of less than a one-tenth interest at best to insure that interest for ten times its value removes the transaction from the category of insurance contracts to those of gambling agreements, concededly illegal in Missouri.

The purpose of the "valued policy" statute is to place upon the insurers the burden and responsibility for an evaluation of the insured's interest and of the property insured at the date of the insurance contract. However, the insurer can discharge this burden only when material facts are revealed to it. The defendant here had no such opportunity and was certainly misled in allowing the policy to remain in effect. The plaintiffs' interest in the insured property had at best been so severely attenuated that at the time of the fire their only unprotected interest was a relatively small sum advanced for closing costs and possibly some $1500 allegedly spent on repairs and remodeling. These in our opinion are not a sufficient basis to carry forward the insurable interest insured at the time the policy was written. The closing costs are comparatively negligible and the claimed remodeling expense occurred after plaintiffs disposed of their interest in the property and could properly only be the subject of a new insurance contract.

The judgment is reversed with directions to the District Court to vacate the judgment and enter judgment in favor of defendants.[6]

---

6. Since defendant was not insuring anything at the time of the fire, its tender of the insurance premium should stand and the premium belongs to plaintiffs.