**Jennifer DIMMITT, Appellant,**

v.

**PROGRESSIVE CASUALTY INSURANCE COMPANY, Respondent.**

No. SC 84638.

Supreme Court of Missouri, En Banc.

Jan. 14, 2003.

part of *Abernathy* is *obiter dicta* and is not to    be followed.

Craig Gaw, H. Ralph Gaw, Tipton, for Appellant.

Susan F. Robertson, Jeffrey O. Parshall, Columbia, for Respondent.

## I.

WILLIAM RAY PRICE, JR., Judge

Jennifer Dimmitt insured the manufactured home in which she lived through Progressive Casualty Insurance Company ("Progressive"). When a snowstorm rendered the manufactured home uninhabitable, Dimmitt filed a claim with the insurance company. Progressive ultimately denied the claim, stating that Dimmitt had no insurable interest because she had not complied with the Missouri statute requiring proper assignment to her of the certificate of title to the manufactured home. Dimmitt filed suit against Progressive. Summary judgment was entered in favor of Progressive. The judgment is reversed.

## II.

In April of 1997, Jennifer Dimmitt took possession of a manufactured home from Wayne Decker, owner of the mobile home park in which Dimmitt subsequently resided. The manufactured home was originally owned by Ralph and Shirley Schwartz. While the precise sequence of events is unclear, at some point the Schwartzes gave their certificate of title for the manufactured home to Decker. The certificate of title was signed by the Schwartzes as sellers, but the purchaser line was left blank. On April 12, 1997, Dimmitt agreed to buy the manufactured home from Decker for $5,500. Dimmitt paid Decker $1,000 up front, and Decker loaned Dimmitt the remaining $4,500, which she faithfully paid back in monthly installments.

Dimmitt took possession of the manufactured home in April 1997, but Decker kept the certificate of title. In October of the same year, she purchased insurance for the home through Progressive. She renewed the policy a year later in October of 1998. The yearly premium for the policy totaled $259. Dimmitt made her final monthly payment to Decker in November 1998, paying off the loan in full. Dimmitt did not receive the certificate of title to the manufactured home until April of 1999. The certificate had remained unchanged in Decker's hands; signed by the Schwartzes as sellers and blank as to the purchaser. Dimmitt placed the certificate of title in her safe. She did not take the certificate to the Department of Revenue to have a new certificate of title issued.

In January 1, 1999, before Dimmitt received the certificate of title, a winter storm occurred. Snow and ice caused the roof of the manufactured home to collapse, resulting in more than $6,000 in damage to the structure of the home and further damage to Dimmitt's personal property. The structural damage rendered the home uninhabitable, forcing Dimmitt to find alternative lodgings. Before the loss Dimmitt enjoyed uninterrupted and unchallenged possession of the manufactured home.

Dimmitt filed timely notice of her loss with Progressive pursuant to the policy. Progressive refused to compensate Dimmitt for her losses. Dimmitt then filed suit against Progressive in the Circuit Court of Morgan County, seeking compensation for losses incurred as a result of the winter storm, vexatious penalties and attorney's fees, prejudgment interest and court costs.

Progressive filed a motion for summary judgment, claiming that Dimmitt did not have an insurable interest in the manufactured home. The trial court sustained the motion, concluding that Dimmitt "did not acquire an insurable interest in the ... [h]ome due to her failure to acquire legal title to said mobile home. Accordingly, the policy purportedly issued by [Progressive] is void." Dimmitt appeals the trial court's decision.

## III.

### A.

▮ This case arises out of a historical interplay between Missouri statutory law, designed to prevent fraud in the sale of motor vehicles and manufactured homes, and the Missouri common law requirement of an "insurable interest" to support cover-age under policies of insurance. "The requirement of insurable interest is necessary to prevent wagering under the guise of insurance and temptation to destroy the insured property." *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 704 (Mo. banc 1984) (citation omitted).

### B.

The sale of manufactured homes is governed by Chapter 700 of the Missouri Revised Statutes.[1] Section 700.320(1) requires

[t]he owner of any new or used manufactured home ... [to] make application to the director of revenue for an official certificate of title to such manufactured home in the manner prescribed by law for the acquisition of certificates of title to motor vehicles, and the rules promulgated pursuant thereto.

Section 700.320(1) RSMo 2000. The manner for the acquisition of certificates of title to motor vehicles is prescribed by section 301.210 RSMo 2000. This section states that upon

sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof ... and deliver the same to the buyer at the time of the delivery to him of such motor vehicle or trailer.

Section 301.210(1).

It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and THE

---

1. The home possessed by Jennifer Dimmitt falls within the statutory definition of a manu-factured home. *See* section 700.010(5) RSMo 2000.

SALE OF ANY MOTOR VEHICLE OR TRAILER REGISTERED UNDER THE LAWS OF THIS STATE, WITHOUT THE ASSIGNMENT OF SUCH CERTIFICATE OF OWNERSHIP, SHALL BE FRAUDULENT AND VOID.

Section 301.210(4) (emphasis added).

There is no dispute that at the time of loss, Dimmitt had not complied with sections 700.320 and 301.210.

### C.

Generally, title is not a prerequisite to the enforcement of an insurance contract for loss. Rather, the insured must have an insurable interest in the property both at the time the insurance contract is made and at the time the loss is sustained. *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 704–705 (Mo. banc 1984). The definition of insurable interest is well settled in Missouri:

> In general, a person has an insurable interest in the subject matter insured where he has such a relation or concern in such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by happening of the event insured against.

*G.M. Battery & Boat Co. v. L.K.N. Corp.*, 747 S.W.2d 624, 626 (Mo. banc 1988) (citations omitted). An insurable interest may be "entirely disconnected from any title, lien, or possession", and may derive solely "from possession, enjoyment, or profits of the property," as well as "other certain benefits growing out of or dependent upon it." *DeWitt*, 667 S.W.2d at 705 (citation omitted). Missouri courts "make every effort to find insurable interest, and to sustain coverage, when there is any substantial possibility that the insured will suffer loss from the destruction of the property."

*G.M. Battery & Boat Co.*, 747 S.W.2d at 627.

### D.

For motor vehicles, however, a line of Missouri decisions has abandoned the general principles of insurable interest and instead required strict compliance with section 301.210. *See, e.g., Faygal v. Shelter Ins. Co.*, 689 S.W.2d 724 (Mo.App.1985) (per curiam). In *Kelso v. Kelso*, this Court stated that "it has been uniformly and consistently held in this state that one who attempts to purchase an automobile without obtaining said assignment of the certificate of ownership acquires no title whatever and has no insurable interest in the automobile." 306 S.W.2d 534, 538 (Mo. 1957) (citations omitted). *See also Sabella v. Am. Indem. Co.*, 372 S.W.2d 36, 40 (Mo. banc 1963) (restating this proposition as asserted in *Kelso* ); *State ex rel. Connecticut Fire Ins. Co. v. Cox*, 306 Mo. 537, 268 S.W. 87 (1924) (per curiam); *but see Hall v. Weston*, 323 S.W.2d 673, 679 (Mo.1959) ("We do not regard the statement in the Kelso case that plaintiff had acquired no insurable interest because he had not obtained title to the automobile as necessary to that decision.").

### E.

Certainly, section 301.210 must be strictly adhered to in an attempt to prevent fraud and deceit in the sale of motor vehicles or manufactured homes. The legislature has clearly mandated that "the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

The legislature, however, did not expressly preclude a good faith buyer who nonetheless failed to comply with these statutory requirements from obtaining merely an insurable interest in such a

vehicle. The policy reasons supporting strict compliance with section 301.210 in order to acquire legal title of a mobile vehicle are not relevant to a determination of insurable interest. Nor does requiring compliance with section 301.210 in order to establish an insurable interest comport with "[t]he controlling rule, perhaps borrowed from elsewhere, but expounded in numerous Missouri cases" that an insured has an insurable interest in property if he or she "will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction". *See G.M. Battery & Boat Co.,* 747 S.W.2d at 626. In fact, the insurance policy Progressive issued to Dimmitt defined insurable interest as "any interest of such a nature that an insured person may directly suffer a loss by an occurrence insured against." (emphasis omitted). The policy language does not condition coverage on legal title or statutory compliance.

### F.

Although Dimmitt's failure to comply with Missouri's certification statute may have rendered her purchase of (and title in) the manufactured home fraudulent and void, it did not extinguish her capacity to suffer real and actual loss. Having in good faith paid the contract amount for the manufactured home, and having paid for insurance to protect the manufactured home, she enjoyed its possession until it was damaged by the snowstorm. Because of the damage to the manufactured home, she suffered the loss of its use, in fact. There is no evidence of bad faith on the part of Dimmitt whatsoever. Under these facts, it was error for the trial court to hold that she did not have an insurable interest in the manufactured home as a matter of law.

This decision does not open the door to fraudulent transfers of motor vehicles or manufactured homes. It merely relaxes the mechanical application of a rule developed to meet a different problem. This case is not so much about compliance with statutes concerning certificate of title as it is about a person's right to collect insurance coverage for an actual loss after the good faith payment of premiums. To this extent, only, are *Kelso v. Kelso,* and the cases following it, overruled.

The judgment of the trial court is reversed, and the case is remanded.

All concur.