# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2460

_____

| | | |
|---|---|---|
| Beckon, Inc., | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| AMCO Insurance Company, | * | |
| | * | |
| Defendant-Appellee, | * | |
| | * | Appeal from the United States |
| AMCO Insurance Company, | * | District Court for the |
| | * | Eastern District of Missouri. |
| Counter Claimant- | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Beckon, Inc., | * | |
| | * | |
| Counter Defendant- | * | |
| Appellant. | * | |

_____

Submitted: March 10, 2010
Filed: August 12, 2010

_____

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

This appeal involves an insurance coverage dispute over the validity of an insurance policy AMCO Insurance Company issued to Beckon, Inc., insuring the latter's business operations as well as the building it occupied but did not own. The district court concluded the entire policy was void on the grounds Beckon lacked an insurable interest in the building. Beckon appeals the district court's grant of summary judgment in favor of AMCO. We reverse and remand for further proceedings.

I

Beckon is in the business of repairing industrial machines used in the beverage container industry. The company started in 1985. In its first several years, Beckon operated out of the garage of its owner, John Herbst. In September 1992, Beckon moved into a 22,000 square foot building located at 455 East Clinton Place in Kirkwood, Missouri (hereinafter the building).

The terms under which Beckon occupies the building are somewhat atypical. The building is owned by Rosalinda Rosemann, the widow of the founder of Roto-Die Company, Inc. Roto-Die occupied the building pursuant to a twenty-year lease starting in 1977. In the fall of 1990, Roto-Die moved to a new location and vacated the building even though the twenty-year lease remained in effect. The lease required Roto-Die "to use reasonable diligence in the care and protection of said premises" and to keep the building "in good order and repair and free from any nuisance or filth upon or adjacent thereto." The lease allowed Roto-Die to sublet the building.

During the two years the building was vacant, it was vandalized. In a move that benefitted both companies, Roto-Die reached an oral agreement with Herbst to allow Beckon to occupy the building in exchange for acting as its caretaker, i.e., to maintain the building and prevent it from being vandalized. The agreement also required Beckon to pay the utilities for the building, which Beckon did, while Roto-Die continued to pay the real estate taxes and sewer bills. Roto-Die instructed Herbst to

"treat the building as your own," or words to that effect. Among other things, Herbst understood this to mean he should insure the building, which he did, unaware that Roto-Die also continued to insure the building.

When Herbst inquired about purchasing the building, Roto-Die told him a sale was a possibility sometime in the future. While Herbst was not told as much, the building was never sold or formally leased to Beckon because Rosemann's interest in the building was limited to a life tenancy, and the remaindermen who would jointly own the building upon her death were embroiled in litigation.

After taking possession, Beckon treated the building as its own, making numerous improvements. Beckon enlarged and replaced the bay doors, remodeled the offices, remodeled the floors and bathrooms, changed the lighting, painted the building, expanded the mezzanine, covered the driveway with asphalt, and installed a large (five ton) hoist. Beckon was not reimbursed for these improvements.

Starting in 1992 and throughout its occupancy of the building, Beckon purchased insurance covering the building, the contents of the building, and its own business operations. In 2004, Beckon switched insurers because Zurich, its insurer at the time, determined Beckon's business operations did not fit within any of Zurich's underwriting programs. Beckon's insurance agent filed an online application with AMCO on Beckon's behalf. The underwriting report AMCO obtained while considering the application listed Beckon as a renter, i.e., "Rents 15,000 sq. ft. in one story brick building."

In October 2004, AMCO approved the application and issued a policy of insurance to Beckon. The policy insured Beckon against damage to the building and its contents, i.e., "business personal property." The policy listed various "Additional Coverages," for loss of business income, extra expenses, equipment breakdown, etc. Separate premiums were charged for the building and the business personal property.

-3-

AMCO renewed the policy for one-year terms in October 2005, and again in October 2006. Beckon paid all premiums.

Between 1992 and 2006, Beckon had no insurance claims in connection with the building. Then, two events occurred within a span of months. On March 4, 2007, sparks from a welder operated by an independent contractor ignited some insulation inside the building and caused a fire. The fire damaged the work areas of the building, and damaged or destroyed many of the building's contents. For example, Beckon estimated damages of $18,000 alone to the five-ton hoist it had installed in the building. In order to carry on its business, Beckon rented space in another location in Fenton, Missouri, while the building was repaired. The cost of renting the temporary space in Fenton approached $10,000 per month. Beckon's temporary rental expenses continued for nearly two years until it was finally able to move back into the building in early 2009. On August 24, 2007, while Beckon waited for AMCO to respond to its fire claim, part of the building's roof blew off during a wind storm. Rain water damaged an interior office area. Beckon repaired the roof at a cost of approximately $35,000, and again reported the loss to AMCO.

Between the time of the fire and the wind storm, AMCO investigated Beckon's ownership interest in the building. After determining Beckon did not own the building, AMCO did not cancel the policy or claim it was void based on the misrepresentation of a material fact. Rather, on April 23, 2007, AMCO continued to provide insurance to Beckon, and issued a Change of Declarations Endorsement to the policy which added Rosemann and Roto-Die as additional insureds. AMCO charged Beckon an increased premium for adding the additional insureds, which Beckon paid.

AMCO failed to accept or deny Beckon's fire claim by September 14, 2007, the date it was required to do so under the terms of the policy (as extended by agreement of the parties). Finally, on October 1, 2007, AMCO denied Beckon's claim for the fire damage to the building on the grounds Beckon lacked an insurable interest in the

building.  On October 16, 2007, AMCO denied Beckon's claim for wind damage to the building on the same grounds.  Later, on November 27, 2007, AMCO paid $532,810.58 under the separate coverage Beckon had purchased for the business personal property damaged in the fire.

Shortly thereafter, Beckon filed suit against AMCO in federal district court asserting claims for breach of contract and vexatious refusal to pay the two building losses (i.e., the fire loss and the wind loss).  AMCO's answer asserted numerous defenses not previously raised by AMCO in its letters denying Beckon's insurance claims, including an allegation Beckon made material misrepresentations in the procurement of the policy.  AMCO also brought a counterclaim seeking to recoup the $532,810.58 it paid Beckon for losses caused by the fire and covered under the business personal property section of the policy.

AMCO filed a motion for summary judgment.  The primary basis for AMCO's motion was that Beckon allegedly misrepresented that it owned the building in its 2004 application.  Secondarily, AMCO argued Beckon lacked an insurable interest in the building because it had no legal or equitable title to the building.

Without addressing the issue of misrepresentation, the district court granted summary judgment in favor of AMCO on the grounds Beckon lacked an insurable interest in the building.  The district court concluded it did not need to reach the question of fraud in the procurement of the policy because the lack of an insurable interest in the building voided the entire policy.  The district court also entered judgment for AMCO on its counterclaim in the amount of $532,810.58, the amount AMCO had already paid under the business personal property section of the policy. Beckon filed a timely appeal.

II

We review the district court's grant of summary judgment de novo. Rand Corp. v. Yer Song Moua, 559 F.3d 842, 845 (8th Cir. 2009). We also review de novo the district court's interpretation of Missouri law. Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005).

A

At the outset, we reject AMCO's contention that the lack of an insurable interest in one of several classes of property insured under a single policy is grounds for voiding an entire policy. Under Missouri law:

> [w]here the policy separates the property insured into distinct classes and specifies the amount of insurance upon each, the contract is severable into as many contracts as there are separate classes of property insured on separate valuations, and the fact that the policy may be void as to the insurance on one class will not necessarily impair its validity as to another.

Fager v. Commercial Union Assurance Co., 176 S.W. 1064, 1065 (Mo. Ct. App. 1915).

The policy's limits for the replacement cost of the building were separate from its limits for the business personal property. See Appellant's Appx. at 100 (setting a policy limit of $675,000 for the replacement cost of the building, and a policy limit of $529,500 for the business personal property). In addition, AMCO disclosed separate premiums for the building and the business personal property in the original application, id. at 86, reflecting AMCO's ability to evaluate independently the risks involved with respect to the separate classes of property insured. The coverage Beckon purchased for its own business personal property was for a separate class of

property insured on a separate valuation than the coverage Beckon purchased for the building.

There is no dispute Beckon had an insurable interest in its own business personal property. Thus, even assuming the building coverage was void due to Beckon's lack of an insurable interest in the building, it does not follow that the validity of the insurance Beckon purchased for its own business personal property was impaired. See Fager, 176 S.W. at 1065; see also Raney v. Home Ins. Co., 246 S.W. 57, 58 (Mo. Ct. App. 1922) (noting the insurer paid and did not appeal a claim for personal property destroyed in a house fire even though it claimed the insured lacked an insurable interest in the house itself); Sun State Roofing Co., Inc. v. Cotton States Mut. Ins. Co., 400 So.2d 842, 844 (Fla. Dist. Ct. App. 1981) (concluding, in a suit brought for coverage under a fire policy, "the trial court erred when it found [the insured's] entire cause of action failed for lack of an insurable interest" because the insured had an uncontested insurable interest in the personal property destroyed in the fire).

As a result, AMCO was not entitled to have the entire policy voided even assuming Beckon lacked an insurable interest in the building. The district court therefore erred when it granted summary judgment on AMCO's counterclaim and ordered Beckon to return the $532,810.58 AMCO paid under the business personal property section of the policy.

Contrary to AMCO's contentions at oral argument, our decision does not conflict with Patterson v. State Automobile Mutual Insurance Co., 105 F.3d 1251 (8th Cir. 1997) (applying Missouri law), where we affirmed the forfeiture of an entire policy. Patterson did not turn upon the lack of an insurable interest, but rather upon a specific misrepresentation provision in that policy, coupled with a jury's determination the insured made a material misrepresentation with regard to one of multiple coverages provided in the policy. See id. at 1253-54. Here, neither the

district court nor a jury has yet considered whether Beckon made a material misrepresentation in procuring the policy.  Thus, while fraud *may* be grounds for voiding an entire policy under the provisions of a particular policy, the lack of an insurable interest with respect to one of several classes of insured property, standing alone, is not a basis for voiding an entire policy.

B

We next decide whether Beckon had an insurable interest in the building itself. Missouri strongly favors finding an insurable interest, indicating its courts should "make every effort to find insurable interest, and to sustain coverage, when there is any substantial possibility that the insured will suffer loss from the destruction of the property."  Dimmitt v. Progressive Cas. Ins. Co., 92 S.W.3d 789, 792 (Mo. 2003) (quoting G.M. Battery & Boat Co. v. L.K.N. Corp., 747 S.W.2d 624, 627 (Mo. 1988)).

> In general, a person has an insurable interest in the subject matter insured where he has such a relation or concern in such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by happening of the event insured against.

Dimmitt, 92 S.W.3d at 792 (quoting G.M. Battery, 747 S.W.2d at 626).

Under Missouri law, the lack of title is immaterial to determining whether a party has an insurable interest.  See G.M. Battery, 747 S.W.2d at 627 ("The material circumstance in determining insurable interest is not title, but possibility of loss."). As a result, neither Beckon's lack of title to the building, nor the somewhat atypical agreement giving rise to its use and occupation of the building, is particularly relevant in determining whether Beckon had an insurable interest in the building.  Our concern is with whether Beckon derived a pecuniary benefit from the building's preservation, or suffered a pecuniary loss from its destruction.

-8-

Applying Missouri's broad definition of insurable interest, we conclude Beckon had an insurable interest in the building under the facts of this case. Beckon's agreement with Roto-Die gave Beckon the right to occupy and use the building. As a result of the fire, Beckon temporarily lost its use of the building and had to rent space in another location to carry on its business operations. Beckon incurred approximately $10,000 per month in rental expenses for nearly two years. Thus, the possession and use of the building clearly had a pecuniary value to Beckon. See DeWitt v. Am. Family Mut. Ins. Co., 667 S.W.2d 700, 705 (Mo. 1984) ("[A]n insurable interest may be derived from possession, enjoyment, or profits of the property." (internal quotations and citation omitted)); G.M. Battery, 747 S.W.2d at 627 (concluding the loss of the remaining six-month term of a lease, together with several other potential consequences, were "very real possibilities for loss" that established an insurable interest).

In addition, Beckon made numerous improvements to the building, such as enlarging and replacing the bay doors, remodeling the offices, remodeling the floors and bathrooms, changing the lighting, expanding the mezzanine, and installing a five-ton hoist. As a result of the fire, Beckon estimated damages of $18,000 to its hoist alone. To whatever extent the fire damaged or destroyed any of the improvements Beckon made to the building, Beckon's consequent pecuniary loss would give rise to an insurable interest in the building. See Studio Frames Ltd. v. Standard Fire Ins. Co., 483 F.3d 239, 245 (4th Cir. 2007) (applying the same test as Missouri's for establishing an insurable interest, and holding a tenant had an insurable interest in a building where it spent its own money on improvements to the building and thus "stood to suffer a loss if the building was damaged or destroyed.").

In an attempt to persuade us Beckon did not have an insurable interest, AMCO relies on two cases, Raney and Lumbermens Mutual Insurance Co. v. Edmister, 412 F.2d 351 (8th Cir. 1969) (applying Missouri law). We are not persuaded by either.

Raney, decided in 1922 by the Missouri Court of Appeals, involved an insurance claim made by the occupant of a home, Wm. M. Raney, who had transferred title to his nine-year-old son in order to defeat a possible judgment against him by a third party. After transferring title, Raney used the home as his own, improved it with his own means, and collected rent on the property. When the home was destroyed by fire, Raney made an insurance claim. 246 S.W. at 58-59. The court held Raney did not have an insurable interest in the home, focusing on his lack of title. Id. at 59. The court also emphasized Raney's "fraudulent purpose" in transferring title to his minor son to avoid a judgment. Id. at 60. Significantly, Raney never addressed or discussed the standard the Supreme Court of Missouri now follows to determine an insurable interest, under which title to the property is immaterial and the focus is upon whether the insured "will derive pecuniary benefit or advantage from [a building's] preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by happening of the event insured against." Dimmitt, 92 S.W.3d at 792.

We are "bound by decisions of the highest state court when interpreting state law." Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010). The Missouri Court of Appeals did not discuss or address in Raney the standard the Supreme Court of Missouri subsequently articulated and now follows to determine an insurable interest. We therefore do not find AMCO's reliance on Raney persuasive.

We are likewise unpersuaded by AMCO's reliance upon Edmister, a case decided by this court in 1969, prior to the Supreme Court of Missouri's decisions in DeWitt, G.M. Battery, and Dimmitt. Edmister, like Raney, involved a claim brought by insureds who remained in possession of, and continued to insure, a dwelling after transferring title to it. After a fire destroyed the property, the insureds claimed an insurable interest based upon their occupancy of the property, its use as a business headquarters, and approximately $1,500 spent on improvements. 412 F.2d at 352-53. The court held neither the insureds' status as tenants, nor the use of the dwelling as a business headquarters, nor the improvements made to the property, were "sufficient

-10-

to constitute an insurable interest under the defendant's policy covering this property." Id. at 354. The court, however, also focused upon the fact the policy was issued when the insureds were still fee owners of the property, and the subsequent transfer in ownership was not disclosed. The court stated "full disclosure should have been made to the insurer by the assureds" after "the drastic change in the insurable interest[.]" Id. at 356. The court determined the lack of disclosure was a material misrepresentation and the insurer was "certainly misled in allowing the policy to remain in effect." Id. at 357.

A respected insurance treatise has criticized the insurable interest reasoning in Edmister, stating "the court makes an assumption, not justified from the facts presented in the opinion, that the plaintiffs were reasonably aware that their occupancy of the premises did not give them a valuable insurable interest – to them the occupancy might have been very valuable." 4 J. Appleman, Insurance Law & Practice § 2241, at 84 (Supp. 2008). The treatise also suggests "[i]n attempting to reach a desirable result, the court fell into the 'hard cases make bad law' trap" and warns practitioners to "be cautious at taking many of the court's statements at face value." Id. In G.M. Battery, the Supreme Court of Missouri characterized the "denial of recovery" in Edmister as turning on the fact the insured "misled the insurance company as to the state of his title." 747 S.W.2d at 627. See also DeWitt, 667 S.W.2d at 707 n.5 (distinguishing Edmister as a case which turns upon a material misrepresentation, and noting the "critical" treatment its insurable interest reasoning has received). Thus, we believe the highest court of Missouri has cabined Edmister as a material misrepresentation case, rather than one which turns upon the lack of an insurable interest.

AMCO also suggests Edmister stands for the proposition that a policy can be voided as an illegal gambling contract when an insured only holds a limited or qualified insurable interest (such as a tenant's occupancy, or an insured's interest in improvements to the property), and yet the policy provides coverage for the entire

property.  See AMCO's Brief at 19.  In G.M. Battery, however, the Supreme Court of Missouri did not void a policy on the grounds that an insurer provided more coverage than that which was commensurate with the limited or qualified interest held by an insured.  Instead, the court noted:

> [Missouri law] places the risk of overinsurance on the insurer rather than on the insured.  The insurer may protect itself by *strictly defining the interest covered by its policy*, or by obtaining representations or warranties about the state of the title, if it deems this information important.  What it cannot do is to issue a policy, collect the premiums, and then argue that the value of the insured's insurable interest in the property is less than the coverage it underwrites.

G.M. Battery, 747 S.W.2d at 627-28 (emphasis added).  Similarly, in DeWitt, the Supreme Court of Missouri placed the burden upon insurers to provide coverage which corresponds to a limited or qualified interest held by an insured:

> Absent fraud, misrepresentation or collusion the valuation in the policy is conclusive upon the parties.  An insurer has an obligation to attempt to ascertain the basis of an insured's interest in the property prior to contracting to insure the property.  In some cases this may require actual inspection of the property, in other cases such as the instant one, merely making a verbal attempt to ascertain the insured's status will be sufficient.  The record before us reveals no evidence of the insurer's attempt to ascertain from the insured her interest in the property.  Where the plaintiff had a reasonable and justifiable basis for believing she had an insurable interest in the property, the insurer cannot issue a policy and collect premiums thereunder and later complain that the insured's interest was overvalued if the insurer never attempted to ascertain that interest through reasonable inquiry.  Thus, if the insured's valuation is accepted without investigation, the insurer cannot thereafter contend that there was fraudulent overvaluation.

DeWitt, 667 S.W.2d at 708 (internal quotations and citation omitted).

"When the highest court of a state disposes of an issue of state law contrary to the resolution of the issue theretofore suggested by a federal court, the latter ruling must give way." Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 429 n.12 (1st Cir. 1996); see also Kinnison v. Houghton, 432 F.2d 1274, 1277 (10th Cir. 1970) (indicating federal courts, in a diversity case, must follow an intervening state court decision even when a prior federal appellate decision cannot be harmonized with the state court decision).

We are bound by the Supreme Court of Missouri's interpretation of state law. At least as to the points of law for which AMCO relies upon Edmister, we believe Edmister is inconsistent with the current state of Missouri law. We therefore decline to consider it.

## C

Finally, AMCO asks us to affirm the district court on the alternative ground that Beckon made false and material misrepresentations in the procurement of the policy, and the policy should be voided in its entirety on that ground. Beckon asks us not to affirm on this alternative ground because it was not addressed by the district court and is "rife with disputed facts." Beckon's Reply Brief at 21.

We decline to affirm on this alternative ground. The issue of misrepresentation was "not considered by the district court, and we leave [it] to be addressed in the first instance on remand, without expressing any view as to [its] merit." Discovery Group LLC v. Chapel Dev., LLC, 574 F.3d 986, 990 (8th Cir. 2009).

## III

We reverse and remand for further proceedings consistent with this opinion.

_____

-13-